[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 12, 2008
THOMAS K. KAHN
CLERK

No. 08-10935
Non-Argument Calendar

_____

D. C. Docket No. 07-00091-CR-T-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM LENORIES WRIGHT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(November 12, 2008)**

Before BARKETT, HULL and FAY, Circuit Judges.

PER CURIAM:

William Lenories Wright appeals his firearm and drug convictions. After

review, we affirm.

# I. BACKGROUND

Wright stopped his pickup truck on the median of a busy interstate highway. Alabama State Trooper James Hendrix stopped to investigate and found that Wright had a suspended license and appeared to have been drinking. After Wright was placed in the patrol car, Hendrix searched Wright's truck and found a firearm and a bag containing crack cocaine and marijuana. Wright was a convicted felon.

Wright was charged with possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2); possession of marijuana, in violation of 21 U.S.C. § 844 (Count 3); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4). Wright pled not guilty.

## A. Motion to Suppress

Prior to trial, Wright moved to suppress: (1) the evidence from the search of his truck; and (2) statements made to Trooper Hendrix after his arrest.

At the suppression hearing, Trooper Hendrix testified about the search and Wright's arrest. Hendrix responded to a call from dispatch reporting a vehicle in the median of Interstate 65. At the time, it was raining and there was heavy traffic. Hendrix found Wright sitting behind the wheel of the pickup truck, which was

2

stuck in the mud. The truck had minor damage and a passenger, Queenie Davis, complained of a shoulder injury.

Hendrix smelled alcohol on Wright's breath and noticed that Wright's speech was slurred. Because of the rain, mud and heavy traffic, Hendrix could not conduct a field sobriety test. However, he did conduct a preliminary breath test, which showed that Wright's blood-alcohol content was .11, over Alabama's legal limit. Hendrix learned that Wright's driver's license was suspended and that Davis did not have a driver's license.

Because neither Wright nor Davis could drive the truck, Hendrix impounded the vehicle and called for a wrecker. Hendrix placed Wright in his patrol car to transport him to the station where he could conduct a field sobriety test under a canopy. Hendrix explained that, although he knew Wright was under the influence of alcohol, he did not arrest Wright for DUI at the scene because he had not yet performed a field sobriety test.

Hendrix returned to the truck to perform an inventory search before the wrecker arrived. Hendrix asked Davis, who was covering herself with a jacket and a blanket, to get out of the truck. As Davis exited the vehicle, Deputy Kevin McNatt, who was assisting Hendrix, pulled away the jacket and blanket, revealing a pistol lying in the middle of the bench seat.

Upon finding the pistol, Hendrix asked Wright if he had a permit to carry a weapon. Wright responded that he did not. Hendrix then advised Wright of his Miranda[1] rights by reading from a card Hendrix carried in his police car. Wright told Hendrix he understood his rights and agreed to answer questions. Wright told Hendrix the drugs and firearm belonged to his brother Larry. Hendrix also advised the passenger, Davis, of her rights, after which she told Hendrix that she had no knowledge of the gun or drugs.

At this point, Hendrix arrested Wright for possession of a firearm without a permit. Hendrix then conducted a more extensive vehicle search and found a Crown Royal bag containing what appeared to be crack cocaine and marijuana behind the driver's seat.

Hendrix explained that the Alabama State Trooper regulations require officers to remove from the roadway the vehicle of a person arrested or detained. Prior to removing the vehicle, the officer must conduct an inventory search. The officer must list all items of value found in the vehicle and have the wrecker driver sign off on the list before removing the vehicle. The officer can search anything in the vehicle, including a bag or box, unless it is locked.

Following the hearing, a magistrate judge issued a report ("R&R")

---

[1]Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

recommending that the district court deny Wright's motion to suppress. The R&R found that the search of Wright's truck was a valid inventory search because Hendrix reasonably concluded that no one was available to take control of the vehicle and, under those circumstances, regulations required Hendrix to impound the vehicle and conduct an inventory search.

The R&R concluded that once Wright admitted he did not have a permit for the firearm, probable cause existed to arrest him. Thus, the second search following his arrest, which uncovered the Crown Royal bag containing drugs, was incident to Wright's lawful arrest. The R&R also concluded that the brief time between the initial search and the reading of the Miranda rights did not render Wright's post-Miranda statements inadmissible.

Wright objected to the R&R. After de novo review, the district court overruled Wright's objections, adopted the R&R and denied Wright's motion to suppress.

**B. Trial**

At trial, Trooper Hendrix repeated his testimony about his encounter with Wright on the interstate median, the search of Wright's truck and Wright's arrest. Hendrix also provided additional details. For example, Hendrix stated that Wright produced his driver's license and registration as requested, and Hendrix checked

the database and learned the license was suspended. Wright also told Hendrix he had been drinking earlier in Birmingham. During the search of the truck, Hendrix found a Hi-Point nine-millimeter pistol sitting in the middle of the bench seat under a blanket. Hendrix testified the pistol would have been within Wright's reach if he was sitting behind the steering wheel.

The Crown Royal bag contained a green leafy substance and several small plastic bags. One of the plastic bags contained a "cookie of crack cocaine," while the others contained only crumbs. Hendrix explained that drug dealers chip smaller pieces off of a "cookie" to sell and that a cookie of crack cocaine is consistent with possession for distribution, not personal use.

Hendrix testified that he read Wright his Miranda rights from a card he kept in his pocket. Hendrix explained that he used this card regularly to ensure he read the rights consistently, that he read all the rights listed on the card and that Wright indicated after each that he understood. After arresting Wright for possession of a firearm without a permit, Hendrix conducted a criminal history check and learned Wright was a felon.

On cross-examination, Hendrix explained that Davis was not charged with firearm possession because Davis told Hendrix she had no knowledge of the gun and there was no evidence the gun belong to her. Wright, on the other hand, knew

of the gun because he stated that it belonged to his brother. Hendrix stated that the gun "was closer to where Mr. Wright was sitting, in my opinion . . . ." When defense counsel reminded Hendrix that he testified at the suppression hearing that he could not determine to whom the gun was closer, Hendrix replied that his suppression hearing testimony was "[a]n error on [his] part." Hendrix explained that he charged Wright with possession of the drugs because of the proximity of the drugs to where Wright was sitting and Wright's statement that the drugs belonged to his brother, which indicated Wright knew the drugs were in the truck.

Deputy McNatt, who assisted Hendrix at Wright's arrest, also testified. According to McNatt, Davis was asked to exit the truck and, as she got out, McNatt pulled away the blanket that was over her legs, exposing the firearm on the bench seat. The firearm was closer to the driver's side. McNatt also found the Crown Royal bag that contained three or four bags of a rock substance and some marijuana. The Crown Royal bag was behind the driver's side of the seat and within arm's reach of the driver, but was not personally accessible to the passenger unless she exited the truck.

McNatt opined that the typical amount of cocaine possessed for personal use is "one or two small rocks" and that personal use drugs usually are not kept in separate packages. McNatt heard Hendrix read Wright his constitutional rights,

7

although he could not recall whether Hendrix read them from a card or a sheet of paper and did not hear Wright's response.

The government also called: (1) Theron Jackson of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified that the pistol found in Wright's truck was manufactured in Ohio, and (2) Michael Hitchcock of the Alabama Department of Forensic Science, who testified that one of the plastic bags inside the Crown Royal bag contained 11.79 grams of crack cocaine and another contained 9 grams of marijuana.

After the government rested, Wright called Queenie Davis. Davis testified, inter alia, that she had only worked "off an on" because of drug use and that crack cocaine was her drug of choice. Davis explained that she discovered the drugs and the firearm in the pockets of the jacket she used to cover herself the night Wright was arrested. Although Davis stated that she got the jacket from her son's house, she denied that her son used drugs. Davis also denied the drugs were "packaged." Davis said the drugs were in one big, clear bag; were in "one big piece," rather than many small pieces; and did not include marijuana. Davis admitted she put the bag behind the seat when police arrived at the scene.

Davis initially could not recall when she discovered the firearm, but stated that it was before the police arrived. Later Davis stated that she found the firearm

right before the truck ran off the road. Davis explained that "it was so shaky, and [the firearm] kind of like almost came out. So I just slid it out of my pocket and put it under the blanket." Davis admitted she did not volunteer to police that the gun had been in her jacket and explained that officers did not ask her about the gun. The district court denied Wright's motion for a judgment of acquittal.

## C.    Jury Instructions

After closing arguments, the district court read the jury instructions. With respect to Court Four, charging possession of a firearm in furtherance of a drug trafficking crime, the district court stated:

> Now, to carry or possess a firearm means that the defendant either had a firearm on or around his person or transported, conveyed, or controlled a firearm in such a way that it was available for immediate use if the defendant so desired during the commission of the drug trafficking offense. To carry a firearm in relation to an offense means that there must be a connection between the defendant, the firearm, and the drug trafficking offense so that the presence of the firearm was not accidental or coincidental but facilitated the crime by serving some important function or purpose of the criminal activity. To possess a firearm in furtherance of an offense means something <u>lower</u> than mere presence of a firearm. It must be shown that the firearm helped, furthered, promoted, or advanced the offense in some way.

(Emphasis added). The jury found Wright guilty on all counts. The district court imposed a 156-month sentence. Wright filed this appeal.

## II.  DISCUSSION

Several of Wright's claims clearly lack merit, and thus we address them

briefly. First, Hendrix's testimony established that Wright's vehicle was impounded and the inventory search was conducted pursuant to Alabama State Trooper regulations. Therefore, the firearm and drugs were found during a valid inventory search and were admissible.

Second, there was sufficient evidence to support the jury's finding that Wright knowingly possessed the firearm and drugs. The government presented ample evidence from which a jury could have reasonably concluded that Wright was aware of the drugs and the firearm and constructively possessed them. Wright relies solely on Davis's testimony that she found the drugs and firearm in her jacket. However, the jury could have, and obviously did, disbelieve Davis's testimony, and we will not disturb that finding. Wright's remaining two claims merit more discussion.

## A. Waiver of <u>Miranda</u> Rights

After placing Wright under arrest and advising him of his <u>Miranda</u> rights, Hendrix asked Wright about the firearm and the drugs. Wright stated that they belonged to his brother. On appeal, Wright argues that the district court erred in not suppressing his post-<u>Miranda</u> statement that the firearm and drugs were his brother's.[2]

---

[2]On appeal, Wright does not argue that his pre-<u>Miranda</u> statement that he did not have a permit to carry a weapon should have been suppressed.

Wright argues, for the first time on appeal, that the government failed to prove he was properly advised of his Miranda rights because there is no evidence of what rights were listed on the card from which Hendrix read.[3]

Under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), "evidence obtained as a result of a custodial interrogation is inadmissible unless the defendant had first been warned of his rights and knowingly waived those rights." United States v. Parr, 716 F.2d 796, 817 (11th Cir. 1983). The government must prove by a preponderance of the evidence that the defendant waived his rights knowingly and voluntarily. United States v. Glover, 431 F.3d 744, 748 (11th Cir. 2005).

To meet its burden, the government may not rely on "presumptions or inferences that when police officers read to an accused from a card they are reading Miranda warnings or that what is read, without revelation of its contents, meets constitutional standards." Moll v. United States, 413 F.2d 1233, 1238 (5th Cir. 1969). However, the government does not rely merely on "a presumption" if the defendant admits a warning was given and the arresting officer testifies that he read from a card containing "the standard Miranda warnings." See United States v.

---

[3]Because Wright did not raise this argument in the district court, we review for plain error. See United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). Under the plain error standard, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . . [and then] only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

11

Klein, 592 F.2d 909, 914 (5th Cir. 1979).

We cannot say the admission of Wright's post-arrest statements was plain error. Hendrix testified not only that he read from a card, but that the card contained the Miranda warnings, that he used this card routinely to advise people of their rights to ensure he stated the rights consistently and that he read all the rights listed on the card. McNatt substantiated this testimony by testifying that he heard Hendrix read Wright the Miranda warnings.

We note that Wright does not claim Hendrix did not read him his rights. He merely challenges the government's proof by asserting that the contents of the card should have been read into the record. However, because Wright never raised this issue in his motion to suppress or his objection to the R&R, neither the district court nor the government had reason to believe that the precise contents of the rights card would be at issue and should be placed in the record.

Wright also argues for the first time that the government failed to show he had the capacity to waive his Miranda rights because he was intoxicated at the time. An accused effectively waives his Miranda rights if he: (1) voluntarily relinquishes them as the product of a free and deliberate choice, rather than through intimidation, coercion or deception; and (2) makes his decision with a full awareness of both the nature of the rights being abandoned and the consequences

12

of the decision to abandon them. United States v. Barbour, 70 F.3d 580, 585 (11th Cir. 1995). A waiver is effective where the totality of the circumstances reveal both an uncoerced choice and the requisite level of comprehension. Id.[4]

Here, although Wright's breath smelled of alcohol and his speech sometimes was slurred, Wright was able to comply with Hendrix's instructions to produce his license and registration and to understand and coherently respond to Hendrix's questions. Wright told Hendrix he understood his Miranda rights. Under these circumstances, the district court did not commit plain error in admitting Wright's post-arrest statements.

**B.      Jury Instruction**

Wright argues that the district court improperly instructed the jury on the meaning of possession of a firearm in furtherance of a drug trafficking crime when the court stated that "to possess a firearm in furtherance of an offense means something lower than mere presence of a firearm."

Ordinarily, we review de novo the legal correctness of a jury instruction; however, when, as here, the defendant did not object to the jury instruction in the district court, we review only for plain error. United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000). To reverse under a plain error standard of review, the

_____

[4]Wright does not claim that his choice was coerced.

challenged instruction must be a plainly incorrect statement of the law and must have been "'probably responsible for an incorrect verdict, leading to substantial injustice.'" Id. at 1271 (quoting Montgomery v. Naga, 168 F.3d 1282, 1294 (11th Cir. 1999)). Furthermore, in reviewing a jury instruction, we must determine whether the district court's charge, "considered as a whole, sufficiently instructed the jury so that the jurors understood the issues involved and were not misled." United States v. Shores, 966 F.2d 1383, 1386 (11th Cir. 1992) (quotation marks omitted).

The parties agree that the district court misspoke when it stated that possession in furtherance of a trafficking offense meant something "lower than" mere presence of the firearm and that the law requires something more than mere presence. See United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002) (concluding that mere presence of a firearm is insufficient to show possession "in furtherance" of a drug trafficking crime). However, we conclude that the district court's mistake did not affect Wright's substantial rights. When the charge is viewed as a whole, it is clear that any misunderstanding created by the district court's use of the word "lower" rather than "higher" was remedied by the district court's full definition of possession in furtherance of a drug trafficking crime.

Immediately preceding its misstatement, the district court stated that the jury

14

must find a "connection between the defendant, the firearm, and the drug trafficking offense so that the presence of the firearm was not accidental or coincidental but facilitated the crime." This statement indicates that mere presence is insufficient. Furthermore, immediately after its misstatement, the district court stated that the government must show "that the firearm helped, furthered, promoted, or advanced the offense in some way." This statement clearly instructs the jury that it cannot find Wright guilty of the offense unless the firearm contributed to the offense in one of the four listed ways, any of which would be sufficient to establish more than mere presence. Viewing the district court's instruction as a whole, we cannot say the district court's one-word misstatement misled the jury or probably led to an incorrect verdict.

## III. CONCLUSION

For all these reasons, we affirm Wright's convictions and sentences. However, we note that the district court's judgment erroneously cites 21 U.S.C. § 844(a)(1) instead of 21 U.S.C. § 841(a)(1) as the statute violated in Count 2. Therefore, we remand to the district court for the limited purpose of correcting this clerical error.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**