[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11553
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 9, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00041-CR-FTM-29-DNF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEE COBB,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 9, 2010)

Before TJOFLAT, WILSON and FAY, Circuit Judges.

PER CURIAM:

Lee Cobb, through counsel, appeals from his convictions for: (1) possession with intent to distribute crack cocaine; (2) using his residence for the purpose of storing, distributing, or using cocaine and crack cocaine; (3) distribution of crack cocaine; and (4) possession of a firearm as a convicted felon. On appeal, he argues that his convictions should be reversed because the district court erred in finding that he received *Miranda*[1] warnings before he made inculpatory statements to police officers, and, as result, erroneously denied his motion to suppress his statements to the officers. Specifically, Cobb argues that: (1) he did not receive *Miranda* warnings before the police officers who searched his apartment interrogated him; (2) even if he did receive *Miranda* warnings at the beginning of the search, the officers were required to re-administer these warnings before they interrogated him in his bedroom; and (3) any waiver of his *Miranda* rights was involuntary. For the reasons set forth below, we affirm Cobb's convictions, but *sua sponte* remand this case for the limited purpose of correcting a clerical error in the district court's final judgment.

**I.**

In a superseding indictment, a federal grand jury indicted Cobb for: (1) possession with intent to distribute crack cocaine, in violation of 21 U.S.C.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 ("Count 1"); (2) using his residence for the purpose of storing, distributing, or using cocaine and crack cocaine, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2 ("Count 2"); (3) distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 ("Count 3"); and (4) possession of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and 2 ("Count 4").  Cobb entered a plea of not guilty on all counts and proceeded to trial.

At trial, Phil McDonald, a Drug Enforcement Administration task force agent employed by the Cape Coral Police Department, testified that, in February 2008, he and other officers executed a search warrant authorizing the search of Cobb's apartment.  While he was inside of Cobb's apartment, McDonald observed cocaine pipes on the kitchen table and utensils typically used to manufacture crack cocaine on top of a microwave oven.  In addition, McDonald also saw a coffee pot, inside of which he discovered two baggies containing substances that later tested positive for crack cocaine.  Inside of a kitchen drawer, McDonald found pieces of mesh that could be used to smoke crack cocaine, and digital scales that could be used to measure cocaine or crack cocaine.

McDonald further testified that, after he finished searching the kitchen, he provided Cobb with *Miranda* warnings.  McDonald averred that he did not speak

3

with Cobb until after he read him his rights under *Miranda*. As part of the *Miranda* warnings, McDonald informed Cobb that he had the right to remain silent, as well as the right to speak with an attorney. After hearing the *Miranda* warnings, Cobb agreed to talk to McDonald. Cobb told McDonald that he was aware of, and responsible for, the drugs and the drug paraphernalia in his apartment. Cobb also stated that he and other individuals who lived in the apartment sold crack cocaine. At the time that Cobb made these statements, both Cobb and McDonald were in the kitchen.

McDonald further testified that, after he spoke with Cobb, he proceeded to search the master bedroom, in which he found additional drug paraphernalia, cocaine, and crack cocaine. While he was in the master bedroom, McDonald again spoke with Cobb, and asked him about the drugs in the bedroom. McDonald averred that he did not engage in making promises or coercion in order to convince Cobb to speak with him, and that Cobb was "cooperative." While they were in the bedroom, Cobb told McDonald that he and Leeann Chambers used the bedroom. He further stated that he was aware of, and was responsible for, the items in the bedroom. In addition, Cobb stated that he and the other individuals who lived in the apartment sold at least an ounce of narcotics every day. When McDonald

asked Cobb about the pipes in his apartment, Cobb stated that he sometimes permitted his narcotics customers to smoke crack cocaine in the apartment.

McDonald further testified that the officers found a rifle in Cobb's bedroom. When McDonald asked Cobb about the rifle, Cobb responded that he was "holding" it for his son. McDonald reminded Cobb that he was a convicted felon, and Cobb responded that he was aware that he was not permitted to be around firearms.

Klaus Chambers, who lived with Cobb, testified that he had assisted Cobb with drug trafficking by picking up cocaine on his behalf and selling crack cocaine on his behalf. He sold crack cocaine out of Cobb's apartment. On any given day, between 10 to 15 people would visit Cobb's apartment to buy crack cocaine. Cobb and Leeann Chambers would provide Klaus Chambers with the crack cocaine to sell to customers.

Robert Wardrop, a detective employed by the Cape Coral Police Department, testified that he assisted in searching the master bedroom in Cobb's apartment. Wardrop testified that he asked Cobb about sets of coins that he found in the bedroom, and Cobb responded that he had received the coins in exchange for crack cocaine. At this point in Wardrop's testimony, the court *sua sponte* asked the parties to approach the bench for a sidebar discussion. During this discussion,

the court stated that it was concerned that it was not clear whether Cobb received *Miranda* warnings prior to his discussion with Wardrop. The prosecution informed the court that it could demonstrate that Cobb had received *Miranda* warnings before he spoke to Wardrop.

Thereafter, Wardrop further testified that he did not hear anyone inform Cobb of his rights under *Miranda*, did not read *Miranda* warnings to Cobb, and did not ask McDonald whether he had read *Miranda* warnings to Cobb. Wardrop identified a rifle as the rifle that he and other officers found in Cobb's bedroom. At this point during the proceedings, the parties stipulated that Cobb was a convicted felon at the time the search of his apartment took place.

Cobb moved to strike Wardrop's testimony. The prosecution offered to recall McDonald in order to establish when he informed Cobb of his *Miranda* rights. Outside the presence of the jury, the government recalled McDonald, who testified that he read the *Miranda* warnings to Cobb verbatim from a card that he had carried with him on the day of the search. McDonald identified a card as one that was identical to the card he had carried with him when he searched Cobb's apartment. He read the contents of the card aloud. The card informed the arrestee that he had the following rights: (1) to remain silent; (2) to ask a lawyer for advice; (3) to have an attorney appointed to represent him if he could not afford an

attorney; and (4) to stop answering questions at any time. McDonald stated that, after he informed Cobb of these rights, he asked Cobb if he understood his rights and, with these rights in mind, whether he wished to speak to McDonald and the other officers. McDonald clarified that he had informed Cobb of these rights while they were in the kitchen, and that this occurred before Wardrop questioned Cobb in the master bedroom.

After McDonald concluded his testimony, Cobb's attorney notified the court that Cobb had just informed him that McDonald's testimony was incorrect, and that Cobb had not received *Miranda* warnings until he was taken to the police department, which occurred after the search of his apartment had ended. Based on this information, Cobb's attorney made an oral motion to suppress the statements that Cobb made to the officers during the search of his apartment, and also requested that the court permit Cobb to testify in support of his motion. The court granted Cobb permission to testify in support of his motion to suppress.

Cobb subsequently testified that the officers had handcuffed him as soon as they entered his apartment to execute the search warrant. The officers did not ask him any questions until they searched his bedroom. At the time that the questioning in his bedroom occurred, he previously had been standing outside for half an hour. McDonald did not inform Cobb of his *Miranda* rights while they

7

were in his apartment. During the search, Cobb answered some of the officers' questions. Any statements that he made to the officers at his apartment occurred before he was informed of his *Miranda* rights.

On cross-examination, Cobb denied that an officer informed him of his *Miranda* rights in his kitchen. Cobb also denied that an officer questioned him in the kitchen, asserting that he was questioned only in his bedroom.

The court denied Cobb's motion to suppress, finding that the government had established, by a preponderance of the evidence, that Cobb was informed of his *Miranda* rights before he made statements in response to questioning by the officers. The court noted that McDonald's testimony and Cobb's testimony were in direct conflict, and indicated that it found that McDonald's testimony was more credible than Cobb's testimony. Thus, the court determined that McDonald had informed Cobb of his rights under *Miranda* "at a point in time that preceded his statements in response to questioning by officers." The court noted that it also denied Cobb's motion to strike Wardrop's testimony.

Thereafter, Wardrop resumed his testimony before the jury. In addition to finding coins in Cobb's bedroom, Wardrop also had discovered gift cards, cameras, and silverware. When Wardrop questioned Cobb about these items, Cobb told him that individuals had given these items to him in exchange for crack

cocaine. In addition, Cobb was asked about a sign in his bedroom that stated "Call back tomorrow. Thank you." He told the officers that he would place this sign on the door to his apartment so that narcotics customers would not wake him up while he was sleeping.

The jury found Cobb guilty as to Counts 1 through 4. The jury's verdict form specified that Count 1 charged Cobb with possession with intent to distribute crack cocaine, and that Count 3 charged Cobb with the distribution of the crack cocaine. However, the court's final judgment provided that Cobb's convictions under Counts 1 and 3 were both for the possession with intent to distribute crack cocaine. The court sentenced Cobb to concurrent terms of 180 months' imprisonment for each count of conviction.

## II.

"We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact, with rulings of law reviewed *de novo* and findings of fact reviewed for clear error." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007). In addition, we view the facts "in the light most favorable to the prevailing party in [the] district court." *Id.* It is within the district court's province to make credibility determinations, and these determinations are generally

conclusive unless the court credits "exceedingly improbable" testimony. *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted).

Under *Miranda*, officers must advise an individual who is in custody of the following: (1) his right to remain silent; (2) that, if he chooses to speak, anything he says can be used against him in court; (3) his right to consult with a lawyer and have his lawyer be present during interrogation; and (4) an explanation that, if he is indigent, a lawyer will be appointed to represent him. 384 U.S. at 467-73, 86 S.Ct. at 1624-27. Statements obtained in violation of *Miranda*, whether exculpatory or inculpatory, are not admissible at trial. *Id.* at 444, 86 S.Ct. at 1612. The government must "prove by a preponderance of the evidence that the defendant waived his rights voluntarily, knowingly, and intelligently." *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005). A defendant's waiver of his *Miranda* rights is knowing and voluntary where, "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and it was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir.) (quotation omitted), *cert. denied*, 130 S.Ct. 272 (2009).

"There is no requirement that an accused be continually reminded of his rights once he has intelligently waived them." *United States v. Barner*, 572 F.3d

10

1239, 1244 (11th Cir. 2009) (quotation omitted); *see also Moore v. Dugger*, 856 F.2d 129, 133-34 (11th Cir. 1988) (holding, in the habeas context, that the defendant's statements were admissible despite the fact they were not preceded by a repetition of the *Miranda* warnings, because he previously had received the *Miranda* warnings and understood these rights). Even if a district court admits a defendant's statement that was obtained in violation of the *Miranda* rule, the error does not warrant reversal if it was harmless. *United States v. Arbolaez*, 450 F.3d 1283, 1292-93 (11th Cir. 2006) (holding that any error in admitting the defendant's statement in violation of *Miranda* was harmless in light of the substantial evidence against him).

Here, the district court did not err in denying Cobb's motion to suppress. Officer McDonald consistently testified that he read *Miranda* warnings to Cobb before any officers questioned him, and Cobb does not point to any evidence demonstrating that this testimony was "exceedingly improbable." While Cobb testified that he did not receive *Miranda* warnings before officers questioned him in his bedroom, it was within the district court's province to determine whether to credit McDonald's testimony over Cobb's testimony. Furthermore, while Cobb contends that any *Miranda* warnings he may have received were "stale" by the

11

time he was questioned in his bedroom, officers are not required to continually re-administer *Miranda* warnings.

Finally, although Cobb asserts that any waiver of his *Miranda* rights was involuntary and unknowing, he does not provide any explanation as to why the waiver would be involuntary and unknowing. McDonald testified that he did not engage in making promises or using coercion in order to induce Cobb to speak to him, and Cobb does not point to any evidence indicating that he did not understand his *Miranda* rights, or was pressured to relinquish them against his will. Thus, Cobb's bare assertion that any waiver of his *Miranda* rights was invalid lacks merit. Accordingly, viewing the evidence in the light most favorable to the government, the court did not err in denying Cobb's motion to suppress because McDonald's testimony supported the conclusion that Cobb validly waived his *Miranda* rights before responding to the officers' questions.

Even if the district court had erred in denying Cobb's motion to exclude the statements he made to the officers, this error would have been harmless in light of the substantial properly admitted evidence against Cobb. The officers found cocaine, crack cocaine, drug paraphernalia, and a rifle in Cobb's bedroom. In addition, Klaus Chambers testified that he sold crack cocaine out of Cobb's apartment on Cobb's behalf. Moreover, Cobb stipulated that he was a convicted

12

felon. As a result, even if the district court had excluded Cobb's statements, substantial evidence supported the jury's determination that Cobb possessed crack cocaine with the intent to distribute it, distributed crack cocaine, used his apartment for the purpose of distributing crack cocaine, and possessed a firearm as a convicted felon. Accordingly, we affirm Cobb's convictions.

## III.

"We may *sua sponte* raise the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors." *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006); *see also United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) (remanding to the district court to correct a clerical error when the judgment cited 18 U.S.C. § 2242(a)(4)(B), but the defendant actually violated 18 U.S.C. § 2252(a)(4)(B)). "[I]t is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment." *Massey*, 443 F.3d at 822 (quotation omitted).

We *sua sponte* note that there is a clerical error in the court's judgment. Count 3 of the superseding indictment charged Cobb with distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), while Count 1 charged Cobb with possession with intent to distribute crack cocaine, in violation of

13

§ 841(a)(1) and (b)(1)(C). The jury's verdict form reflects that it convicted Cobb of these offenses as they were set forth in the superseding indictment. The court's final judgment in this case, however, reflects that Cobb's convictions for both Counts 1 and 3 were for the offense of possession with intent to distribute crack cocaine. Because the district court's judgment incorrectly states that Cobb's conviction for Count 3 was for possession with intent to distribute crack cocaine, instead of distribution of crack cocaine, we remand this case for the limited purpose of correcting the clerical error in the district court's final judgment.

**CONVICTION AFFIRMED, REMANDED WITH INSTRUCTIONS.**