[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-11514

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 23, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-20825-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARISSA GISELLE MASSEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 23, 2006)**

Before BIRCH, MARCUS, Circuit Judges, and NANGLE[*], District Judge.

BIRCH, Circuit Judge:

_____

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

Marissa Massey appeals her 87-month sentence after she pled guilty to conspiracy to import 100 grams or more of heroin and assault on a federal officer. She argues that the district court erred in enhancing her sentence by 2 levels for attempting to obstruct the administration of justice under U.S.S.G. § 3C1.1 (2004), both because (1) she lacked the capacity to "willfully" obstruct justice and (2) her actions did not materially hinder the investigation or prosecution. Finding no reversible error with regard to the sentencing enhancement, we AFFIRM the sentence; however, we VACATE and REMAND for the limited purpose of correcting a clerical error in the judgment.

## I. BACKGROUND

On 9 October 2004, Massey and two other defendants arrived at Miami International Airport from Ecuador. United States Customs and Border Protection ("CBP") suspected that they were internal carriers of drugs. At the secondary inspection at the airport, the defendants consented to x-rays, which showed that all three had two to three foreign objects in their pelvic regions.

The defendants were sent to Jackson Memorial Hospital, Ward D. While there, the defendants refused treatment and were verbally abusive with CBP and medical staff. Massey, in particular, screamed threats and profanities at anyone nearby. During this time, she had one leg and hand handcuffed to the side of her

2

bed. Due to her increasingly belligerent behavior, CBP officers decided to handcuff her other hand to the bed. Unbeknownst to CBP, Massey had already taken two of the three foreign objects from her body and hidden them inside her pillow. She resisted being handcuffed and repeatedly hit an officer, until she was eventually restrained by several more CBP officers. On route to radiology later that day, Massey spit in the face of the same officer she had hit before and threatened further violence.

The next day, Massey, still in Ward D, admitted to an officer that she had something inside her and was trying to pull it out. Medical staff were unable to remove the object. During this time, Massey became angry, got off the examining table, and went back to her room. Her arms and legs were no longer handcuffed as she had been complying. Later that night, she pulled the covering off the object still inside her and went into medical distress. She was then taken to Obstetrics and Gynecology, where doctors removed the object and some brown powder, which later tested positive for heroin. While there, Massey went into respiratory arrest. She recovered, and the following day she was taken off the respirator.

On 11 October 2004, after Massey was taken to Obstetrics and Gynecology, CBP officers conducted a search of her room in Ward D. They discovered the two objects that she had hidden in her pillow. They also found that she had

3

unsuccessfully attempted to make a hole in her mattress. The other two defendants eventually admitted to CBP officers that they had foreign objects and consented to having them removed. All of the objects found in the vaginal canal of each defendant tested positive for heroin. Massey was released from Jackson Memorial Hospital on 13 October 2004.

The Drug Enforcement Administration laboratory determined that the heroin seized from Massey had a net weight of 147.3 grams. The total weight of heroin seized from all three defendants was 549.1 grams. Pursuant to a plea agreement, Massey pled guilty to Count One and Count Nine in the indictment, respectively, conspiracy to import 100 grams or more of heroin, in violation of 21 U.S.C. § 960(a), (b)(2)(A) and 21 U.S.C. § 963, and assaulting a federal officer, in violation of 18 U.S.C. § 111(a)(1).

At her plea hearing, Massey stated that she took Zoloft to treat her bipolar disorder. She claimed that she did not remember everything that happened at the hospital because she did not receive Zoloft during her stay there and was under the influence of the heroin that had burst inside her. Her defense attorney argued, and the government conceded, that this might be a mitigating factor with regard to Massey's ultimate sentence.

In calculating the base offense level for Count One, the presentence

investigation report ("PSI") noted that the defendants were held equally accountable for the 549.1 grams of heroin. The Sentencing Guidelines provide that an offense involving the importation of at least 400 grams but less than 700 grams of heroin has a base offense level of 28. U.S.S.G. § 2D1.1(c)(6). After a 2-level enhancement for the obstruction of the justice under U.S.S.G. § 3C1.1, the defendant's adjusted offense level for Count One was 30. Count Nine had an adjusted offense level of 13. The combined adjusted offense was 30, which was reduced by 3 levels for an acceptance of responsibility and for timely notifying authorities of her intention to plead guilty. For a total adjusted offense level of 27, the applicable Guidelines range was 87 to 108 months.

In the objection to the PSI, Massey argued that the 2-level enhancement for obstruction of justice should not be applied and stated that the lack of Zoloft "clearly added to her mental anxiety and instability . . . . Coupled with the heroin overdose . . . it is hard to see how . . . the hiding of the heroin in the hospital pillow . . . was a 'material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender.'" R1-45 at unnumbered 2. At her sentencing hearing, Massey's attorney repeatedly referenced the fact that she was "under psychiatric medical care [and] was taking Zoloft," R4 at 4, and that her "very unstable mental and physical condition" would not justify an adjustment for

5

obstruction. Id. at 6-7. The district judge rejected Massey's objection, applied the 2-level enhancement, and sentenced Massey to 87 months of incarceration followed by four years of supervised release.

## II. DISCUSSION

As stated before, Massey raises two objections on appeal to the application of U.S.S.G. § 3C1.1, which enhances a sentence for willfully obstructing the administration of justice. First, she argues that her actions were not willful. Second, she contends that her actions were not a material hindrance to the investigation or prosecution of the offense. After discussing the standards of review, we will address these two objections, and the clerical error in the judgment, in turn.

A. Standard of Review

Though United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), has rendered the Sentencing Guidelines advisory, the standards of review remain the same. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (per curiam). When a district court imposes an enhancement for obstruction of justice, we review the district court's factual findings for clear error. United States v. Uscinki, 369 F.3d 1243, 1246 (11th Cir. 2004); see also Merrill Stevens Dry Dock Co. v. M/V Yeocomico II, 329 F.3d 809, 816 (11th Cir. 2003) (stating that under

clear error, we must affirm the district court's determination so long as it is "plausible in light of the record viewed in its entirety"). We review the district court's application of the Sentencing Guidelines to those facts <u>de novo</u>. <u>Uscinki</u>, 369 F.3d at 1246.

When the appealing party does not clearly state the grounds for an objection in the district court, we are limited to reviewing for plain error. <u>United States v. Zinn</u>, 321 F.3d 1084, 1087 (11th Cir. 2003) (citation omitted). "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . . . [and then] only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." <u>United States v. Shelton</u>, 400 F.3d 1325, 1328-29 (11th Cir.2005) (citation and quotations omitted).

B. <u>Whether Massey Acted Willfully</u>

Massey argues that her lack of Zoloft and ingestion of heroin left her without the capacity to willfully obstruct justice. The government responds that Massey failed to object to the "willful" component of U.S.S.G. § 3C1.1 in the PSI or at the sentencing hearing and therefore has not preserved that issue for appeal. As such, the government argues that this objection should be reviewed under the plain error standard.

We have held that, for a defendant to preserve an objection to her sentence for appeal, she must "raise that point in such clear and simple language that the trial court may not misunderstand it." United States v. Riggs, 967 F.2d 561, 565 (11th Cir. 1992). When the statement is not clear enough to inform the district court of the legal basis for the objection, we have held that the objection is not properly preserved. Id. The defendant also fails to preserve a legal issue for appeal if the factual predicates of an objection are included in the sentencing record, but were presented to the district court under a different legal theory. See United States v. Reyes-Vasquez, 905 F.2d 1497, 1499-1500 (11th Cir. 1990).

Here, the record shows that Massey's attorney, in objecting to the enhancement for obstruction of justice, repeatedly referenced the effect of Zoloft and heroin on her mental state during her stay in the hospital. In so doing, he did not specifically utter the words "intent" or "mens rea," and he often referred to the fact that there was no "material hindrance," a different legal theory from "willfulness," when discussing this issue. See R1-45 at unnumbered 2; R4 at 4-9. Nevertheless, we believe, in reviewing the record in its entirety, that the issue of Massey's mental state at the time of the attempted concealment, and, therefore, her capacity to commit the obstruction of justice, was adequately presented to the district court. Thus, we review the issue for clear error.

8

Here, there is no clear error. Section 3C1.1 of the Sentencing Guidelines is entitled "Obstructing or Impeding the Administration of Justice":

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offence of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels."

We have interpreted "willfully . . . to mean the defendant must consciously act with the purpose of obstructing justice." United States v. Revel, 971 F.2d 656, 661 (11th Cir. 1992) (quotations omitted); see also United States v. Burton, 933 F.2d 916, 918 (11th Cir. 1991) (per curiam) (citing United States v. Garcia, 909 F.2d 389, 392 (9th Cir. 1990) for the proposition that "[§] 3C1.1 was intended to apply to 'something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police'").

Rather than an instinctive or spontaneous reaction to an impending arrest, the uncontroverted facts demonstrate that Massey consciously acted with the purpose of obstructing justice. Massey entered the hospital with three objects inside her body. The objects contained heroin. While at the hospital, she hid two of the objects in her pillow. She also attempted to create an additional hiding place inside her mattress. With the exception of a few violent outbursts early in her

9

hospital stay, Massey appeared lucid and deliberate. She resisted the officers when they attempted to handcuff her other arm, which would have prevented her from hiding the remaining object inside her body. Moreover, she did not have a heroin overdose until after she had hidden the first two objects. It does not appear that she ingested a substantial amount of heroin, if any, until she broke the covering of the third object that remained inside her, which triggered this overdose. Massey put forward no scientific evidence regarding the effect of the absence of Zoloft and the presence of heroin on her bipolar mental state. For these reasons, there is no clear error because Massey's actions were willful within the meaning of § 3C1.1.

C. Whether Massey Actions Were a "Material Hindrance"

Massey additionally claims that her actions did not result in a "material hindrance" to the official investigation or prosecution of the offense. While often argued interchangeably, Massey appears to make two separate arguments when discussing this issue. The first argument is that the recovery of the drugs was inevitable, since Massey could not leave the hospital until the objects were extracted. Thus, she argues that the attempted concealment was futile and therefore not material. In Massey's view, the only question was "when" the objects would be extracted. The second argument is that the government already knew all the necessary information about the objects from the x-rays and other

10

relevant evidence <u>prior</u> to the actual extraction of the objects. Because Massey made these arguments in her objection to the PSI and at sentencing, it merits clear error review.

With regard to the first argument, Massey suggests that the "actual hindrance" test in Application Note 4(d) to Sentencing Guidelines § 3C1.1 is controlling. <u>See</u> <u>United States v. Garcia</u>, 208 F.3d 1258, 1262 (11th Cir. 2000), <u>vacated and remanded on other grounds by</u> <u>Garcia v. United States</u>, 531 U.S. 1062, 121 S. Ct. 750 (2001), <u>reinstated by</u> <u>United States v. Garcia</u>, No. 97-3222, slip. op. at 2 (11th Cir. Mar. 9, 2001) (per curiam); <u>see also</u> <u>United States v. Rowlett</u>, 23 F.3d 300, 306 (10th Cir. 1994) (noting that there must be an "actual hindrance" to an official investigation or prosecution when the conduct occurred contemporaneously with arrest), <u>overruled on other grounds by</u> <u>United States v. Goff</u>, 314 F.3d 1248, 1249-50 (10th Cir. 2003). The Note includes the following conduct as willful obstructions:

> destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]

U.S.S.G. § 3C1.1 cmt. n.4(d). Citing <u>United States v. Shriver</u>, 967 F.2d 572, 575

11

(11th Cir. 1992), Massey argues further that there must be a "significant hindrance" to the investigation, an even greater requirement than the "material hindrance" found in Application Note 4(d). See id. (applying what is now U.S.S.G. § 3C1.1 cmt. n.4(g) and concluding that "[o]ther circuits which have addressed this issue have held that section 3C1.1 requires the false statement to effect significantly the investigation before imposing an enhanced sentence").

Massey's first argument on this issue does not withstand clear error review. The "material hindrance" language after the semicolon in Application Note 4(d), or the "actual hindrance test," applies when the conduct occurs contemporaneously with the arrest. Garcia, 208 F.3d at 1262. Massey has conceded that her arrest occurred before she was taken to the hospital. Since the concealment occurred at the hospital, this was not contemporaneous with the arrest. Thus, only the first part of Application Note 4(d) is applicable. U.S.S.G. § 3C1.1 cmt. n.4(d) ("destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so") (emphasis added).

Shriver is inapposite because it concerns Application Note 4(g), which addresses false statements. While Application Note 4(g) has a requirement that the materially false statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense," Application Note 4(d), which

12

is on point and governs the physical concealment of evidence, contains no such language.  U.S.S.G. § 3C1.1 cmt. n.4(d), (g).

Under U.S.S.G. § 3C1.1, the threshold for materiality is "conspicuously low."  United States v. Dedeker, 961 F.2d 164, 167 (11th Cir. 1992); see also U.S.S.G. § 3C1.1 cmt. n.6 ("'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.").  Under this low standard, Massey's attempts to conceal the heroin against her were material.  It is self-evident that illegal drugs are material to any drug investigation or prosecution.  Massey intended to destroy the most incriminating evidence against her.  The fact that she was unsuccessful, or even that the concealment was destined to fail, which is debatable, is irrelevant.

Even accepting that Massey attempted to hide material evidence, if the government knew beforehand all the relevant information or did not otherwise need the evidence in its prosecution or investigation of the offense, then § 3C1.1 will not apply.  With regard to this second argument, Massey posits that United States v. Savard, 964 F.2d 1075 (11th Cir. 1992) is on point.  In Savard, customs agents boarded a marijuana laden sailboat.  Id. at 1076.  They questioned the three men aboard the boat about their trip.  The stories the men told were lies.  In the

13

shoe of one of the sailors, agents found a slip that showed that, contrary to his story, the sailboat had been boarded by the Coast Guard in the Yucatan area. Id. at 1077. That defendant's sentence was enhanced by 2 levels for obstruction of the administration of justice for hiding the slip of paper in his shoe. We reversed the enhancement and remanded for resentencing because, at the time of the defendant's arrest, the agents already knew all the information contained on the slip of paper (e.g., that the boat had been boarded in the Yucatan). Id. at 1078-79.

Massey's second argument likewise fails clear error review. Savard is inapposite because, unlike the information on the slip hidden in the sailor's shoe, the government in this case did not know beforehand all the information about the objects that Massey had hidden. See Savard, 964 F.2d at 1076. Without possession of all the heroin, the government did not have all of the information or proof necessary to bring the appropriate charges. Furthermore, the calculation by the district court of Massey's sentence under the advisory Guidelines was dependent on an accurate assessment of the weight of drugs she and her codefendants had conspired to import. The heroin seized from Massey had a net weight of 147.3 grams. The total weight of heroin seized from all three defendants was 549.1 grams. Section 2D1.1(c)(6) of the Guidelines provides that an offense involving the importation of at least 400 grams but less than 700 grams of heroin

14

has a base offense level of 28. With a range of only 300 grams within that base level, the weight of heroin (147.3 grams) seized from Massey was critical to a fair and accurate calculation of her sentence (notwithstanding the fact that, in hindsight, the base offense level would have remained the same without the inclusion of the 147.3 grams). Furthermore, cocaine and other drugs have different base offense levels at the same weight. For instance, the base offense level for 400 grams of cocaine is 24, as opposed to 28 for the equivalent amount of heroin. U.S.S.G. § 2D1.1(c)(6), (8). Importantly, at the time Massey hid the two objects inside her pillow, the government did not know with certainty the type or weight of the drug she and her codefendants possessed. It is not a foregone conclusion that Massey would have admitted to the type and weight of the drug if the objects had not been discovered or if the remaining object inside her had not burst. Without these discoveries, it is even conceivable that Massey might have argued that she possessed a different drug, or denied that she possessed any illegal drugs at all.

D. Clerical Error

Although we find that Massey's sentence is correct, there is a clerical error in her judgment. Massey pled guilty to Counts 1 and 9 of her indictment, and the crime of assaulting a United States officer was listed as Count 9. The judgment lists the crime of assaulting a United States officer as Count 2. We may sua sponte raise

15

the issue of clerical errors in the judgment and remand with instructions that the district court correct the errors. See United States v. Anderton, 136 F.3d 747, 751 (11th Cir. 1998) (per curiam) (remanding with directions to the district court to correct the clerical errors when the statute cited in the judgment and commitment order was incorrect). Furthermore, "[i]t is fundamental error for a court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment." United States v. Diaz, 190 F.3d 1247, 1252 (11th Cir. 1999).

### III. CONCLUSION

Marissa Massey appeals her sentence after she pled guilty to conspiracy to import 100 grams or more of heroin and assault on a federal officer. Finding no error with regard to the enhancement for obstructing justice, we affirm Massey's sentence. However, we vacate and remand for the limited purpose of correcting a clerical error in the judgment. **AFFIRMED IN PART; VACATED AND REMANDED IN PART**.