[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 19, 2006
THOMAS K. KAHN
CLERK

No. 05-15124
Non-Argument Calendar
_____

D. C. Docket No. 03-00255-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY HAMPTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 19, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Larry Hampton appeals his 120-month sentence imposed after he pled guilty

to possession with intent to distribute 5 or more grams of cocaine base in violation of 21 U.S.C. § 841(a). Hampton contends that the district court erred when it applied a two-level enhancement for possession of a firearm in connection with a drug offense because the only evidence in support of the enhancement was in the presentence investigation report ("PSI"). Hampton further argues that his Sixth Amendment rights were violated when his sentence was enhanced by a judge's factual findings and imposed under the then-mandatory sentencing guidelines. After review of the record and parties' briefs, we affirm.

## BACKGROUND

Hampton was initially charged in a three-count indictment alleging two counts of felon in possession of a firearm and the above-mentioned drug charge (Count 3). Hampton subsequently pled guilty to the drug charge pursuant to an agreement and the government dismissed the other counts.

According to the undisputed facts in the PSI, police monitored a confidential informant who made a controlled purchase of crack cocaine from Hampton. After police verified Hampton's address, they obtained a search warrant for his home and observed a quantity of crack cocaine and a scale in the kitchen. Upon questioning, Hampton admitted that a firearm was located in his bedroom's dresser drawer. Agents retrieved a 9mm semiautomatic pistol and $1500 cash from the

2

drawer, $200 of which was the "buy money" that the informant used to purchase cocaine base from Hampton.

The PSI set Hampton's base offense level at 26, pursuant to U.S.S.G. § 2D1.1(c)(7). Next, the PSI added a two-level enhancement for firearm possession under U.S.S.G. § 2D1.1(b)(1) based on the discovery of a firearm in Hampton's home in "very close proximity" to the drug sale proceeds and only "rooms away" from a quantity of crack cocaine. Three levels were reduced for acceptance of responsibility under U.S.S.G. § 3E1.1(a)-(b) for a total offense level of 25. The PSI further noted that, following his arrest for the instant offense, Hampton signed a "Waiver of Final Hearing" with regard to his parole revocation, in which he admitted being guilty of possessing cocaine with intent to distribute, possession of a deadly weapon, and possession of a firearm by a convicted felon. Hampton was then assessed 11 criminal history points, placing him in criminal history category V. Thus, the applicable sentencing guideline range was 100 to 125 months imprisonment.

Hampton filed a written objection to the two-level firearm enhancement, arguing that there was no evidence that the firearm even belonged to him and that drug crime and firearm were unconnected. He stated no objection to the PSI's description of the "Waiver of Final Hearing" and its contents. At sentencing,

3

Hampton's attorney argued that the enhancement should not be applied because "the pistol was not found in [his] car, and it was not found in the same room as the crack cocaine." R.3-33 at 4.

The government, adopting the probation officer's stance, argued that the firearm did not have to be in the same room as the crack cocaine so long as it was present at the time of the charged conduct, including all relevant conduct, such as the presence of the "buy-in" money located in the same drawer. The district court overruled Hampton's objection and adopted the PSI.

The court found that the guidelines provided for a 100 to 125 month sentence. Prior to pronouncing Hampton's sentence, the court inquired about Hampton's family, children, and educational background. The court found no reason to depart from the applicable sentence under the guidelines, and sentenced Hampton to 120 months imprisonment. For its reasons, the court stated that Hampton had a lengthy criminal history, including being on parole for a drug-related offense when he committed the instant offense, and had not shown much ambition or respect toward continuing his education or maintaining employment. The court sentenced Hampton near the upper-end of the applicable guideline range.

Hampton failed to file a timely appeal, but filed a motion to vacate, pursuant to 28 U.S.C. § 2255, arguing, *inter alia*, that counsel had been ineffective in failing

4

to timely appeal despite having been told do so. The motion was denied in part, but Hampton was eventually permitted to file an out of time appeal.

## STANDARD OF REVIEW

We review the district court's fact determination that supported the sentencing enhancement as a finding of fact subject to the clearly erroneous standard, while the application of the Sentencing Guidelines to those facts is a question of law reviewed *de novo*. *United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir. 2006), *petition for cert. filed,* (June 05, 2006) (No. 05-11415). When a defendant fails to lodge a Sixth Amendment objection to his sentence, this Court reviews only for plain error. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005), *cert. denied,* 125 S. Ct. 2935 (2005).

## DISCUSSION

### I. Use of PSI report

Hampton challenges the district court's finding that he possessed the firearm based on information in the PSI report. To preserve an objection to his sentence for appeal, a defendant must raise the legal issue in clear and simple language to the district court. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006). Here Hampton's attorney filed an objection to the PSI report which argued that no

5

evidence showed the firearm belonged to the defendant or that the defendant ever possessed the firearm while selling cocaine. Although his oral objection focused on a different legal theory (that the firearm and crime were not connected), he incorporated by reference his filed statements. We will therefore treat the issue as preserved and review the finding under the clearly erroneous standard.

Under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement is warranted if a dangerous weapon, including a firearm, was possessed. This enhancement should be applied if a weapon was present "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. The district court may base its findings of fact on evidence present at trial or sentencing, facts admitted by the defendant, or undisputed statements in the PSI. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). When facts are in dispute, once the prosecution shows by the "preponderance of evidence that the firearm was present at the site of charged conduct, the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable." *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995) (per curiam).

In the instant case, the PSI clearly stated that, following his arrest, Hampton signed a "Waiver of Final Hearing" admitting his guilt for possession of cocaine, possession of a deadly weapon, and possession of a firearm by a convicted felon.

6

There was only one firearm found in Hampton's home—the .9mm handgun found in the same drawer as the buy-in money. The waiver's contents and the gun's location were undisputed. Accordingly, the district court did not clearly err by finding that Hampton possessed it for purposes of the enhancement. Hampton failed to proffer evidence at sentencing that it was clearly improbable that the firearm was possessed in connection with the offense, and, therefore, the district court did not err by relying on solely the PSI to support the enhancement.

## II. Sixth Amendment

Because Hampton failed to preserve his Sixth Amendment objection to his sentence, we review only for plain error. *Rodriguez*, 398 F.3d at 1298. Under this standard, we "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations and citations omitted).

Hampton has met the first and second prongs of the plain error test. After judgment had been entered, but prior to this appeal, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the

7

Sixth Amendment's guarantee to the right to a jury trial. *United States v. Booker*, 543 U.S. 220, 231-36, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Under a mandatory guidelines system, the district court enhanced Hampton's sentence based on a finding of fact made by the judge which went beyond the facts admitted by the defendant or found by a jury, thus committing a *Booker* error. Although the error was not "plain" at the time of sentencing, "it is enough that the error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 US 461, 468 (1997).

However, the third prong is "exceedingly difficult" to meet. *United States v. Shelton*, 400 F.3d 1325, 1331 (11th Cir. 2005). To do so, Hampton must demonstrate that, but for the mandatory guidelines, there is a reasonable probability he would have been sentenced differently. *See Rodriguez*, 398 F.3d at 1300. The record does not support this conclusion. First, the district court sentenced Hampton to the higher end of the sentencing guidelines range after considering, just as it would under the present advisory system, Hampton's criminal history and his nature and characteristics. This is inconsistent with the suggestion that a lighter sentence may have been imposed absent the guidelines. *See United States v. Curtis*, 400 F.3d 1334, 1336 (11th Cir. 2005). The court expressed an intent to send the defendant away for a long time to get the

8

defendant's attention. Finally, unlike cases like *Shelton*[1], the court made no statements of regret or remorse about the severity of the sentence. Hampton bears the burden of persuasion here, and he has failed to meet the third prong.

Upon review of the record and consideration of the parties' briefs, we discern no reversible error. Therefore, we affirm Hampton's sentence.

**AFFIRMED.**

---

[1] In Shelton, this Court held that a defendant satisfied the third prong because the district court stated that it thought the guideline sentence was too severe, that it was unfortunate, and that the sentence was more than appropriate. Shelton, 400 F.3d at 1332-33.