[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11310
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cr-00343-BBM-GGB-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTIAN ZARATE MENDEZ,
a.k.a. Christian Zarate-Mendez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 16, 2010)

Before BLACK, WILSON and FAY, Circuit Judges.

PER CURIAM:

Christian Zarate Mendez appeals his 63-month sentence for conspiracy and attempt to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. He claims, first, that the district court plainly erred in attributing 100.5 kilograms of cocaine to him. He further argues that the district court should have applied a four-level minimal-role reduction to his offense level, rather than a two-level minor-role reduction. For the reasons set forth below, we affirm.

I.

In 2009, a confidential source ("CS") working under the direction of the Drug Enforcement Administration ("DEA") received more than 100 kilograms of cocaine from a supplier in Texas. The Texas supplier instructed the CS to find a truck driver to transport the cocaine from Atlanta. Once in Atlanta, the driver would be given a contact number for delivery of the cocaine. After undercover agents transported the cocaine to Atlanta in a controlled delivery, the CS contacted them with a telephone number for Noel Tejeda-Ortega.

An undercover agent, posing as a tractor-trailer driver, called Tejeda-Ortega, informed him that he was ready to unload the truck, and asked him to come to the Sam's Club at Interstate 85 and Clairmont Road. Tejeda-Ortega asked the agent to bring the load to a location in south Atlanta, but the agent

refused. Tejeda-Ortega told him to call back later. When they spoke again, Tejeda-Ortega eventually agreed to meet at the Sam's Club, and he advised that he would be driving a white and grey Ford Ranger.

A few minutes later, a grey Ford Ranger and a Chevy Tahoe entered the Sam's Club parking lot. Tejeda-Ortega drove the Tahoe through the parking lot to a gas station across the street. Mendez exited the Ranger, called Tejeda-Ortega, and handed the phone to the agent. Tejeda-Ortega again tried to change the location of the delivery, but eventually agreed that Mendez would take the cocaine at the Sam's Club. The agent handed Mendez a bag containing approximately 24 kilograms of cocaine and 25 kilograms of sham cocaine, and together they placed it on the back of the Ranger. As the agent entered the sleeper cab to retrieve another bag containing approximately 54 kilograms of cocaine, other agents approached them and placed Mendez under arrest. Tejeda-Ortega was arrested at the gas station. The DEA determined that the bags contained a total of 100.5 kilograms of real and sham cocaine.

A supplier in Mexico had informed Tejeda-Ortega that he would be sending a package to him, which Tejeda-Ortega believed would contain drugs. Tejeda-Ortega did not know who the intended recipient would be. He would have received further instruction once he obtained the package. Mendez told officers

that Tejeda-Ortega had asked him that day to help retrieve the package. Tejeda-Ortega did not tell him what was in the package, who the source was, or who the recipient would be, but Mendez suspected that the package would contain drugs.

Mendez pled guilty to both counts of the indictment and successfully argued for safety-valve relief. He further argued that his offense level should be reduced by four levels, as he had a minimal role in the offense. The court found that a mitigating-role reduction was appropriate, as Mendez was merely a driver, but it concluded that his role was not very different from Tejeda-Ortega's role. Accordingly, it applied a two-level minor-role reduction.

Mendez did not object to the drug-quantity calculation. He argues on appeal that he did not know how much cocaine would be provided or the number of bags in which it would be contained, and he took possession of only one bag, which contained both real and sham cocaine. He contends that he could not reasonably foresee that the conspiracy involved 100.5 kilograms of cocaine, and, thus, he should be held accountable for only the 24 kilograms of real cocaine of which he took possession.

## II.

A district court must begin the sentencing process by correctly calculating

the applicable guideline range. *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007). Likewise, we begin our review of a sentence for reasonableness by ensuring that the district court did not commit any significant procedural error, such as improperly calculating the guideline range. *Id.* at 51, 128 S.Ct. at 597. Where, as here, the defendant fails to object in the district court to a purported procedural error, we review for plain error. *See United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006). Thus, Mendez must show (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

At the sentencing hearing, the government must prove by a preponderance of the evidence any fact to be considered by the district court, *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005), including the applicability of any guideline enhancements, *United States v. Ndiaye*, 434 F.3d 1270, 1300 (11th Cir. 2006). "The findings of fact of the sentencing court may be based on evidence heard during trial, facts admitted by a defendant's plea of guilty, undisputed statements in the presentence report, or evidence presented at the sentencing hearing." *United States v. Saunders*, 318 F.3d 1257, 1271 n.22 (11th Cir. 2003)

5

(quotation and alteration omitted).

The Sentencing Guidelines specify that a defendant is to be held accountable for (1) all of the acts and omissions he committed, aided and abetted, or otherwise willfully caused; and (2) all reasonably foreseeable acts and omissions taken by others in furtherance of the jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(A), (a)(1)(B). "[T]he defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2). "The requirement of reasonable foreseeability applies only in respect to the conduct . . . of others. . . . It does not apply to conduct that the defendant personally undertakes . . . ." *Id.* Additionally, the district court does not plainly err when it bases a defendant's sentence for a possession charge on the total quantity of both real and sham cocaine involved. *United States v. Martinez*, 83 F.3d 371, 377 (11th Cir. 1996).

Because Mendez was held accountable only for the amount of cocaine of which he personally attempted to take possession, his arguments as to reasonable forseeability are inapposite. *See* U.S.S.G. § 1B1.3(a)(1)(A), (a)(1)(B), & comment. (n.2). In light of his guilty plea and the undisputed facts in the

6

presentencing investigation report, *see Saunders*, 318 F.3d at 1271 n.22, the court properly concluded that Mendez attempted to possess the entire shipment, including both bags, although his arrest prevented him from taking possession of the second bag. Accordingly, he was properly held accountable for the full quantity under § 1B1.3(a)(1)(A). Finally, the district court did not plainly err in including both the sham cocaine and the real cocaine in the drug-quantity calculation. *See Martinez*, 83 F.3d at 377. Therefore, the district court's drug-quantity determination was not plainly erroneous.

## III.

A district court's determination of the defendant's role in the offense is reviewed for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999). "[A] similar fact pattern may on occasion give rise to two reasonable and different constructions. This is inherent in the fact-intensive inquiry specifically contemplated by the Guidelines. . . . [A] trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review." *Id.* at 945. Thus, "[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, . . . it will be rare for [us] to conclude that the sentencing court's determination is clearly erroneous." *Id.* The party seeking the mitigating-role adjustment bears the

burden of establishing its applicability by a preponderance of the evidence. *Id.* at 939.

"If the defendant was a minimal participant in any criminal activity," his offense level is reduced by four levels. U.S.S.G. § 3B1.2(a). The minimal-participant designation is reserved for those "who play[] a minimal role in concerted activity," and "who are plainly among the least culpable of those involved in the conduct of a group." *Id.* § 3B1.2, comment. (n.4). The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the others' activities is indicative of a minimal role. *Id.* The minimal-participant adjustment is to be used infrequently. *Id.* On the other hand, if the defendant was a "minor participant," his offense level is reduced by only two levels. *Id.* § 3B1.2(b). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2, comment. (n.5).

In determining whether a mitigating-role adjustment applies, the district court should consider two principles: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *De Varon*, 175 F.3d at 940. As to the first prong of this analysis, the court must

assess the defendant's role in relation to all of the relevant conduct that was attributed to him under § 1B1.3, as the broad scope of that section may cause some defendants to be held accountable for conduct that is much broader than their specific acts. *Id.* at 940-41. "Only if the defendant can establish that [he] played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *Id.* at 944. The amount of drugs is relevant and may be determinative in the context of minimal participants, such as where an individual offloaded part of a single shipment in the context of a very large drug smuggling operation, or where an individual was recruited as a courier for a single smuggling transaction involving only a small amount of drugs. *Id.* at 943.

As to the second prong of the analysis, the court should compare the defendant to the other participants only to the extent that the others (1) "are identifiable or discernable from the evidence," and (2) "were involved in the relevant conduct attributed to the defendant." *De Varon*, 175 F.3d at 944. Relative culpability might not be dispositive, since it is possible that none of the participants had minor or minimal roles. *Id.* Thus, the defendant must show that he "was less culpable than *most other participants* in [his] relevant conduct" in

9

order to receive a minor-role reduction. *Id.*

The only relevant conduct for which Mendez was held accountable was the delivery of the 100.5-kilogram shipment. A supplier in Mexico and an importer/supplier in Texas provided the 100.5 kilograms of cocaine to the CS for delivery to Tejeda-Ortega, Tejeda-Ortega recruited Mendez at the last minute to pick up the cocaine for him, Mendez drove separately to the pick-up site and took the cocaine from the DEA agent while Tejeda-Ortega waited across the street, and Tejeda-Ortega was to make the final delivery after the importer gave him contact information for the ultimate buyer. Mendez did not know who had provided or purchased the cocaine. He was not told the contents of the package he was to pick up, but he suspected it contained drugs. As Mendez's involvement with the delivery was relatively minor and he was less culpable than most other participants, a mitigating-role reduction was appropriate for consideration. *See De Varon*, 175 F.3d at 940-44.

Given Mendez's limited involvement and his lack of knowledge about the enterprise or the other participants, the district court arguably could have found that his participation satisfied the minimal-role definition. Nevertheless, the court's finding, that Mendez's involvement and level of knowledge were not so much less than Tejeda-Ortega's as to make him plainly among the least culpable

10

for the offense, is supported by the record.  Thus, the court's choice between the two permissible views of the evidence and its resulting decision to award a minor-role reduction rather than a minimal-role reduction were not clearly erroneous.  *See De Varon*, 175 F.3d at 945.

For the foregoing reasons, we affirm Mendez's sentence.

**AFFIRMED.**