[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13794
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cr-00012-RBD-KRS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL PAIGE PALMER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 20, 2019)

Before WILSON, JILL PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Paige Palmer appeals his sentence of 97 months' imprisonment,

imposed after he pled guilty to one count of transportation of child pornography, in

violation of 18 U.S.C. § 2252A(a)(1) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  Palmer advances three claims.  First, he maintains that the district court erred when, for the purposes of calculating his guideline range, it grouped his offenses *before* separately calculating the adjusted offense level for each offense, rather than after. Second, Palmer argues that the district erred when it applied a distribution enhancement because the record lacked any evidence that he distributed child pornography, or alternatively, that his acts of distribution should not qualify as relevant conduct.  And third, Palmer urges us to remand his case so that the district court may correct a scrivener's error, as the judgment incorrectly identifies the statute that codifies his possession conviction.

Because we conclude that the district court did not commit any reversible error in calculating Palmer's guideline range, we affirm Palmer's total sentence. We reverse and remand, however, for the limited purpose of correcting the clerical error in the judgment.

## BACKGROUND

On January 17, 2018, a grand jury indicted Palmer for transporting and possessing child pornography.  Officials found 254 videos and 84 images of child pornography on Palmer's several digital-media devices.  Their examination further revealed that, on December 10, 2017, Palmer used an application to distribute at

least four child-pornography files to another user. Palmer pled guilty to both offenses.

The Probation Office prepared a presentence report (PSR) and calculated Palmer's guideline range. Probation grouped Palmer's possession and transportation offenses into a single-count group pursuant to U.S.S.G. § 3D1.2(d). It then applied the higher base offense level of the two crimes—a level of 22 for the transportation charge—as Palmer's base offense level. After adding several enhancements for specific offense characteristics and a reduction for acceptance of responsibility, Probation calculated a total offense level of 34, and a guideline range of 151 to 188 months.

Prior to sentencing, Palmer claimed that Probation erred because it grouped his offenses before applying specific offense enhancements rather than after, in supposed contravention of U.S.S.G. § 1B1.1(a). He argued that this method improperly increased his total offense level and guideline range because the distribution and use-of-computer enhancements applied only to his possession offense, not his transportation offense. He also claimed that if Probation had properly applied the enhancements to each count prior to grouping them, he would have received an adjusted offense level of 33 for both counts, reduced to 30 after

3

applying a three-level decrease for acceptance of responsibility.[1] Palmer's guideline range would be 97 to 121 months under this method.

Palmer also objected to a two-level enhancement for knowingly distributing child pornography under U.S.S.G. § 2G2.2(b)(3)(F). He claimed that his then-alleged act of distributing child pornography was not relevant conduct because it did not occur during his offenses, in preparation for his offenses, or in the course of attempting to avoid detection or responsibility for his offenses, as required by U.S.S.G. § 1B1.3(a)(1)(B).

The district court overruled both objections and sentenced Palmer to 97 months' imprisonment. However, the district court's resulting judgment incorrectly states that both the transportation conviction (Count One) and possession conviction (Count Two) are codified at § 2252A(a)(1) and (b)(1). In fact, Count Two is codified at § 2252A(a)(5)(B) and (b)(2).

## DISCUSSION

Palmer claims that the district court erred when it grouped his counts before separately calculating the adjusted offense level for each offense; that it further erred when it applied the enhancement for distribution without adequate basis in

---

[1] Palmer's initial brief provides helpful visuals to demonstrate the differences between the two methods of calculation. *See* Appellant's Initial Br. at 6–7 (district court's calculation), 8 (Palmer's preferred method).

4

the record; and that it made a clerical error when it identified the wrong statute of conviction for Count Two in its judgment.  We consider each argument in turn.

I.

When determining whether a defendant's sentencing guideline range was calculated correctly, we review legal conclusions de novo, factual findings for clear error, and the district court's application of the Sentencing Guidelines to the facts with "due deference."  18 U.S.C. § 3742(e); *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010).  The deference due to the district court's application of the Guidelines to the facts depends on the nature of the question presented.  *United States v. Baptiste*, 876 F.3d 1057, 1061 (11th Cir. 2017).  Generally, the district court's application of a particular enhancement, adjustment, or guideline is treated as a factual finding for purposes of appellate review and reviewed for clear error.  *United States v. Williams*, 340 F.3d 1231, 1238–39 (11th Cir. 2003).  A relevant-conduct determination under U.S.S.G. § 1B1.3 is treated as a factual finding and reviewed for clear error.  *See United States v. Siegelman*, 786 F.3d 1322, 1332 (11th Cir. 2015).  The Sentencing Guidelines must be interpreted in light of their commentary and application notes, "which are binding unless they contradict the Guidelines' plain meaning."  *United States v. Dimitrovski*, 782 F.3d 622, 628 (11th Cir. 2015).

Palmer claims the district court erred when, for the purposes of calculating his guideline range, it grouped his offenses before separately calculating the adjusted offense level for each offense, rather than after.  We disagree.  Explaining why requires us to zigzag through relevant portions of the Sentencing Guidelines Manual.

Section 1B1.1(a) requires the sentencing court to determine the appropriate sentencing range by applying the Guidelines' provisions in a particular order, "*except as specifically directed.*"  *See* U.S.S.G. § 1B1.1(a).  Though there are eight steps in § 1B1.1(a), only the first four steps are at issue here:

> (1) Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* §1B1.2.
> (2) Determine the base offense level and apply any specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.
> (3) Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.
> (4) If there are multiple counts of conviction, repeat steps (1) through (3) for each count. Apply Part D of Chapter Three to group the various counts and adjust the offense level accordingly.

*Id.* § 1B1.1(a)(1)–(4).

As part of the first step, the district court properly identified the appropriate offense guideline provision for both of Palmer's offenses as § 2G2.2.  But § 1B1.2

6

continues and also requires the sentencing court to review § 1B1.2(b).  Section

1B1.2(b) mandates that after the sentencing court determines the appropriate

guideline section for the offense, it should then determine the applicable guideline

range in accordance with "[r]elevant [c]onduct" under § 1B1.3.  *Id.* § 1B1.2(b).

And section 1B1.3(2) provides that, for offenses of a character for which

§ 3D1.2(d) would require grouping of multiple counts, the sentencing court must

apply the specific offense characteristics by considering all acts and omissions that

were part of the "same course of conduct or common scheme or plan as the offense

of conviction."  *Id.* § 1B1.3(a)(2).

Section 3D1.2 requires that the sentencing court group together all counts

involving "substantially the same harm."[2]  *Id.* § 3D1.2. Grouping is required under

this provision:

> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity

---

[2] The Sentencing Guidelines mandate grouping so as to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch.3, Pt.D, intro. comment.

of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

*Id.* § 3D1.2(a)–(d).  Subsection (d) also lists specific offenses to be grouped under it, offenses to be excluded from this kind of grouping, and instructions for offenses that fit neither category.  *Id.* § 3D1.2(d).  Offenses covered by § 2G2.2—the guideline that covers both of Palmer's offenses—must be grouped under § 3D1.2(d).  *Id.* § 3D1.2(d).

But that is not all.  Section 3D1.3 provides that, in the case of counts grouped together under § 3D1.2(a)–(c), the offense level applicable to a group is the offense level for the most serious of the counts comprising the group. [3]  *Id.* § 3D1.3(a).  But, in the case of counts grouped together under § 3D1.2(d), the offense level applicable to a group is the offense level corresponding to the "aggregated quantity."  *Id.* § 3D1.3(b).  Application Note 3 further explains that "[w]hen counts are grouped pursuant to § 3D1.2(d), the offense guideline applicable to the aggregated behavior is used."  *Id.* § 3D1.3, comment. (n.3).  And, under this provision, the sentencing court is to determine whether the specific offense characteristics apply based upon the "combined offense behavior taken as a whole."  *Id.* § 3D1.3, comment. (n.3).

---

[3] The offense level is the sum calculated after all adjustments from Chapter Three have been added to the base offense level from Chapter Two.  U.S.S.G. § 3D1.3, comment. (n.1).

Palmer argues § 1B1.1(a) mandated the district court to determine his guideline range for each count separately before grouping them.  But his argument ignores that § 3D1.3(b) directs a different sequence: group the counts and *then* apply any applicable enhancements under Chapters Two and Three to the aggregate conduct of both counts.  *See id.* § 3D1.3(b).  The district court correctly determined that Palmer's offenses involved substantially the same harm, that his conduct was ongoing in nature, and that the offense levels for both his offenses were covered by § 2G2.2.  It therefore grouped the offenses under § 3D1.2(d).  Since the counts were grouped together under § 3D1.2(d), the offense level applicable to the group was the offense level "corresponding to the aggregated quantity."  *Id.* § 3D1.3(b).  And the sentencing court was to determine which specific offense characteristics applied based upon the "combined offense taken as a whole."  *Id.* § 3D1.3, comment. (n.3).  This instruction is necessary to create "a single offense for purposes of the guidelines."  *Id*. Ch.3, Pt.D, intro. comment.  To do otherwise would not only ignore the language of § 3D1.3(b) but would also ignore its—along with § 3D1.2(d)'s—repeated focus on the defendant's aggregate conduct.  *See id.* § 3D1.3(b) ("[T]he offense level applicable is the offense level corresponding to the *aggregate quantity*.") (emphasis added); § 3D1.3, comment. (n.3) ("[T]he offense guideline applicable to the *aggregate behavior* is used.")

9

(emphasis added); § 3D1.2(d) ("When the offense level is determined largely on the basis of … some other measure of *aggregate harm*.") (emphasis added).

Although Palmer argues that the phrase "aggregated quantity" in § 3D1.3(b) refers only to aggregate loss amounts or drug quantities, that is not a viable reading of that provision.  Section 3D1.3(b) describes how to determine the offense level applicable to counts grouped under § 3D1.2(d), and § 3D1.2(d) specifically includes § 2G2.2 as one the many provisions to be grouped under that subsection.  Offenses under § 2G2.2 do not involve aggregate loss amounts or drug quantities, nor do many of the other offenses listed under § 3D1.2(d).  *See, e.g.*, *id.* § 3D1.2(d) (listing non-drug and non-loss offenses to be grouped including U.S.S.G. § 2A3.5 (Failure to Register as a Sex Offender), U.S.S.G. § 2G3.1 (Importing, Mailing, Or Transporting Obscene Matter; Transferring Obscene Matter to a Minor; Misleading Domain Names), U.S.S.G. § 2K2.1 (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition), U.S.S.G. § 2L1.1 (Smuggling, Transporting, or Harboring an Unlawful Alien), U.S.S.G. § 2L2.1 (Trafficking in a Document Relating to Naturalization, Citizenship or Legal Resident Status, or a U.S. Passport [among other things]), and U.S.S.G. § 2N3.1 (Odometer Laws and Regulations)).  Limiting § 3D1.3(b) to only those scenarios involving drugs or loss amounts would mean ignoring part of the list provided by the Guidelines' drafters.

10

Moreover, as noted above, Application Note 3 to § 3D1.3 clarifies that, for counts under § 3D1.2(d), the specific offense characteristics should be applied to the "combined offense behavior taken as a whole." *See id*. § 3D1.3, comment. (n.3). Section § 3D1.3(b)'s direction to calculate the offense level "corresponding to the aggregated quantity" is best read then as an instruction for the sentencing court to group the counts and then apply any applicable enhancements under Chapters Two and Three to the aggregate conduct of both counts.

Accordingly, the district court did not err in grouping Palmer's offenses and applying all enhancements applicable to both offenses in calculating his adjusted offense level. Indeed, Palmer's offenses were grouped under § 3D1.2(d) and, thus, § 3D1.3 specifically directed the sentencing court to group the counts and apply specific offense characteristics to the "combined offense behavior taken as a whole." *See id*. § 3D1.3(b); *id.* § 3D1.3, comment. (n.3).

## II.

Typically, a district court's decision to enhance a defendant's sentence for distributing child pornography is a factual finding reviewed for clear error. *See United States v. Little*, 864 F.3d 1283, 1290–91 (11th Cir. 2017). But when a party did not raise a sentencing issue before the district court, we review for plain error. *United States v. Lange*, 862 F.3d 1290, 1293 (11th Cir. 2017). "We may not correct an error that the defendant failed to raise in the district court unless the

11

error is plain, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

We cannot invoke plain-error review or reverse when a party has invited or induced the district court into making an error. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005); *see, e.g.*, *United States v. Jernigan*, 341 F.3d 1273, 1289–90 (11th Cir. 2003) (concluding that a defendant whose counsel had affirmatively stipulated to the playing of a tape-recorded statement had invited any error resulting from the jury hearing the tape). When a party "waives a procedural right or agrees to the admissibility of certain evidence, he cannot later complain that any resulting error is reversible." *United States v. Brannan*, 562 F.3d 1300, 1306 (11th Cir. 2009); *see, e.g.*, *United States v. Harris*, 443 F.3d 822, 824 (11th Cir. 2006) (finding no reversible error because defense counsel invited error by waiving client's right to a presentence report); *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006) (holding that defendant invited error because he—in his plea agreement and at the plea colloquy—"expressly acknowledged" that the court could impose a term of supervised release and did not object to supervised release at sentencing).

Palmer argues that the district court erred by applying an enhancement for knowingly distributing child pornography because the government failed to provide evidence to support the PSR's assertion that he sent child pornography

12

files.  Yet in the proceedings below, Palmer never claimed that the government failed to prove that he sent child pornography.  Instead, he claimed that his then-alleged act of distributing child pornography was not relevant conduct because it did not occur during his offenses, in preparation for his offenses, or in the course of attempting to avoid detection or responsibility for his offenses, as required by U.S.S.G. § 1B1.3(a)(1)(B). Because Palmer did not object to evidence of the distribution enhancement at any point during the proceedings below, we review for plain error.  *See Lange*, 862 at 1293.

But even under plain error review, Palmer cannot succeed as he invited the error by conceding that the distribution enhancement applied to his possession offense.  *See Silvestri*, 409 F.3d at 1327.  At sentencing, the district court questioned whether Palmer would concede that the enhancement applied to his possession offense and explained why it believed the enhancement applied. Palmer responded by stating "Yes, Your Honor."  Palmer then explained that, although the distribution enhancement applied to his possession offense, it did not apply to his transportation offense.  He argued that the enhancements applicable only to his possession offense were improperly applied because the district court should have applied the enhancements prior to grouping the counts.  After the district court determined that the counts should be grouped prior to applying the enhancement, the government stated that it was prepared to present evidence to

13

support the enhancements, but it did not believe it would be necessary because Palmer had conceded that the enhancement applied. Palmer only responded by stating the he believed he had "noted [his] objection in [his] previous argument." But Palmer's previous argument was only that the offenses were improperly grouped and that the admitted distribution of child pornography was not relevant conduct. Nowhere in the record below does Palmer object to the facts in the amended PSR or specifically dispute that he had distributed child pornography.

In summary, we find that Palmer conceded that the distribution enhancement applied to his possession offense, and only argued that the enhancement was inapplicable to the transportation offense. Therefore, Palmer invited any error regarding the application of the distribution enhancement to his possession offense. And since the district court properly grouped the possession and transportation offenses and then applied all enhancements applicable to the aggregated conduct, the district court did not commit any reversible error in calculating Palmer's guideline range.

## III.

It is a fundamental error for a district court to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment. *United States v. Massey*, 443 F.3d 814, 822 (11th Cir.

14

2006).  Therefore, we may remand to the district court for the limited purpose of correcting clerical errors in the judgment.  *Id.*

Palmer was charged, in Count Two, with possession of child pornography, in violation of § 2252A(a)(5)(B) and (b)(2).  But the district court's judgment lists the statute of conviction for Count Two as § 2252A(a)(1) and (b)(1).  Though we affirm Palmer's total sentence, we remand to the district court for the limited purpose of correcting this scrivener's error.  *See Massey*, 443 F.3d at 822.

## CONCLUSION

For the foregoing reasons, we affirm Palmer's total sentence.  We reverse and remand, however, for the limited purpose of correcting the clerical error in the judgement.

**AFFIRMED in part; VACATED AND REMANDED in part.**