[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13099

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

BENNY EARL YAUGER, JR.,

Defendant- Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:20-cr-00305-LSC-SGC-1

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Benny Yauger, Jr. pleaded guilty to one count of unlawful possession of a firearm. The district court sentenced him to 90 months' imprisonment. He now argues that the district court abused its discretion by justifying an upward variance from the Guidelines range with a clearly erroneous fact. He also argues that his sentence was based on an incorrect application of a Guidelines enhancement. Because the district court did not rely on a clearly erroneous fact and because any error in its application of the enhancement was harmless, we affirm.

## I.

In January 2020, the Greene County, Alabama Sheriff's Office responded to a call about a shooting. The caller then identified the vehicle from which the shots had been fired. The responding officer pulled over the vehicle, and a backup officer joined him at the scene. A man fled from the passenger seat into the woods while carrying a rifle. Almost immediately afterward, someone called 911 and told the dispatcher that he would "kill the n****r police if they didn't back off" because he is a "n****r killer." The two officers then heard shots fired from the woods, and they retreated.

Police determined that Yauger had fled the vehicle, made the 911 call, and fired the shots in the woods. The Sheriff's Office

obtained arrest warrants for the attempted murder of the two police officers, for making terrorist threats, and for attempt to elude. A few months later, state and federal officers went to execute the arrest at Yauger's family's property, where they found him in a shed. He surrendered without incident, unarmed but with a .308 round in his pocket. In and around the shed, the police found five guns, thousands of rounds of ammunition, a pickle jar filled with marijuana, a separate bag filled with marijuana, and twelve marijuana seedlings. According to a police officer who helped clear the guns, one of them was a jammed .308 caliber rifle that took multiple officers several minutes to clear. And one of the officers who arrested Yauger testified that a loaded .22 rifle was also hanging immediately outside the door to the shed.

Yauger had a prior felony conviction for possession of a controlled substance, and the United States charged him with one count of unlawful possession of a firearm under 18 U.S.C. § 922(g)(1). He pleaded guilty without a plea agreement.

At sentencing, the United States and Yauger disagreed about the applicability of a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B), which applies when a defendant "used or possessed any firearm or ammunition in connection with another felony offense." The United States argued that Yauger's firearm possession was connected to his possession of marijuana for other than personal use, which is a felony under Alabama state law. *See* Ala. Code § 13A-12-213. Yauger countered that he only possessed the marijuana for personal use, and that he had accordingly at most

committed a misdemeanor under Alabama law.  *See* Ala. Code § 13A-12-214.  He also argued that there was no "connection" between his possession of the firearms—which he claimed he owned for hunting—and his possession of the marijuana.  The parties stipulated that Yauger was under a state indictment for possession of marijuana not for personal use, but that one of the arresting officers had assessed that the marijuana was a personal use amount.  Without the enhancement, the Guidelines range would have been 30 to 37 months in prison.  With the enhancement, the Guidelines range was 46 to 57 months in prison.

The district court determined that the enhancement applied. The court first noted that the presence of the jammed firearm was consistent with Yauger having attempted to operate the rifle when the officers first arrived.  The court also indicated that the presence of a loaded rifle right by the door was "alarming" because it suggested a potential readiness to engage in violence at a moment's notice.  The court determined that the quantity of marijuana was consistent with unlawful possession in the first degree for other than personal use, and that the guns were present at the scene for the purpose of protecting the drugs.

The district court then sentenced Yauger to 90 months in prison, varying upward from the Guidelines range of 46 to 57 months.  It explicitly noted that it would have reached the same sentence whether or not it applied the enhancement.  The court again speculated that "the only reason why there wasn't a shootout at the place was because the gun apparently jammed, the rifle." But

it caveated that "whether that happened or didn't happen, he was set up for that, for them to have a shootout there at the facility." The court said that it considered the statutory maximum of 120 months, but only gave a sentence of 90 months because Yauger surrendered rather than have a shootout with law enforcement. The court then referenced the § 3553(a) factors, noting that it considered a 90-month sentence to be "reasonable when I consider your nature, your circumstances, the circumstances of this occasion, the need to protect the public from your criminal conduct.  Everything—all those factors together."  The court ordered the sentence to run concurrently with any sentence for Yauger's state court charges for attempted murder, making a terrorist threat, attempt to elude, and marijuana possession, because it was "considering all the conduct of the defendant" in its calculation of his federal sentence.

Yauger objected that the upward variance from the Guidelines range was unreasonable.  He now appeals his sentence.

## II.

We review the procedural and substantive reasonableness of a sentence for abuse of discretion. *United States v. Overstreet*, 713 F.3d 627, 636 (11th Cir. 2013).  "When the appealing party does not clearly state the grounds for an objection in the district court, we are limited to reviewing for plain error."  *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006).  Yauger objected to the application of the Guidelines enhancement, but he did not specifically argue below that the district court had relied on a

6                    Opinion of the Court                    21-13099

clearly erroneous fact. However, because the United States does not press this point and because the standard of review does not affect the outcome, we analyze both issues for abuse of discretion.

Yauger argues that the district court abused its discretion by basing its sentence on a clearly erroneous fact. He claims that the court's speculation that he would have had a shootout with the police if his gun had not jammed was not supported by the record.

We disagree. The district court caveated its theory that the jammed gun prevented a shootout; it made clear that "whether that happened or didn't happen," it was basing its upward variance on the fact that Yauger was "set up" for "them to have a shootout." The more appropriate question is whether the court clearly erred in determining that Yauger was "set up" for a shootout.

The court's finding was not clear error. Police found Yauger —who was wanted for attempted murder and who had allegedly threatened to "kill the n****r police" if they didn't "back off"—in a shed with five guns and thousands of rounds of ammunition. In other words, he allegedly threatened to shoot the police if they pursued him, the police did in fact pursue him, and they found him with everything he would need for a shootout. We do not think that the court clearly erred by inferring that Yauger was "set up for a shootout" in these circumstances.

Yauger also argues that the court erred by applying the Guidelines enhancement. But we need not consider this question. When a district court notes that it would have imposed the same

sentence even if it had not imposed a Guidelines enhancement, then—so long as the ultimate sentence was substantively reasonable even without the enhancement—any error in applying the enhancement "will not affect the outcome" and is therefore harmless. *United States v. Keene*, 470 F.3d 1347, 1348–49 (11th Cir. 2006). Here, the court explicitly held that it would have applied the same sentence with or without the enhancement. And for the same reasons that we do not believe the district court clearly erred in determining that Yauger was set up for a shootout, we also think that a 90-month sentence was substantively reasonable regardless of whether the enhancement applied. The unlawful possession of a firearm is always a serious offense, but it is even more so when the offender has outstanding warrants for attempted murder of two police officers and making terrorist threats, and also has access to multiple firearms and large quantities of ammunition. The district court's sentence reasonably accounted for these "circumstances of the offense." *See* 18 U.S.C. 3553(a).

Yauger responds by arguing that *Keene* does not apply when the district court incorrectly applies an enhancement and also bases its sentence on a clearly erroneous fact. *See United States v. Slaton*, 801 F.3d 1308, 1320 (11th Cir. 2015). But as we have already discussed, the district court did not base its sentence on a clearly erroneous fact. Yauger's argument thus fails, and any error in the district court's application of the enhancement was harmless.

★    ★    ★

Because the district court did not rely on a clearly erroneous fact, and because any error in applying the Guidelines enhancement was harmless, we **AFFIRM.**