[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15812
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cr-00290-ACC-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDRICK BODISON,
a.k.a. Lover,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 11, 2013)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Frederick Bodison appeals his convictions and

his 100-month total sentence for three counts of distributing illegal narcotics in

violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). After review, we affirm Bodison's convictions and sentences. However, we vacate the district court's judgment and remand with instructions that the district court correct a clerical error.

## I.  FACTS AND PROCEDURAL HISTORY

### A.    Indictment and Trial

In 2011, a federal grand jury in the Middle District of Florida returned a four-count indictment against defendant Bodison and a co-defendant, Roderick Mobley. Count 1 charged Bodison and Mobley with conspiring to distribute and possess with intent to distribute cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; Count 2 charged both defendants with distributing and possessing with intent to distribute crack cocaine, in violation of § 841(a)(1), (b)(1)(C); Count 3 charged Bodison with distributing and possessing with intent to distribute crack cocaine, methylenedioxymethamphetamine ("MDMA" or "Ecstasy"), and N-Benzylpiperazine ("BZP"), in violation of § 841(a)(1), (b)(1)(C); and Count 4 charged Bodison with distributing and possessing with intent to distribute both crack cocaine and MDMA, in violation of § 841(a)(1), (b)(1)(C).[1]

### B.    "Operation Woodchop"

---

[1] Mobley later pled guilty to Count 2, and the government dismissed the conspiracy charge (Count 1) against him.

At trial, the evidence showed that the charges resulted from "Operation Woodchop," a 17-month investigation of drug and firearm trafficking in the area around Zellwood and Tangerine, Florida. This investigation eventually led to the arrests of between 60 and 70 individuals. During the course of Operation Woodchop, law enforcement officers recruited a confidential informant ("CI"), Keith Brown, to conduct three controlled purchases from Bodison.

## C.    June 15, 2011 Controlled Purchase

The first controlled purchase occurred on June 15, 2011. On that date, CI Brown met defendant Mobley at a predetermined location in Zellwood. Mobley then entered Brown's vehicle and instructed him to drive to Bodison's residence, located at 6360 Wadsworth Road, Zellwood, Florida. There, Brown gave $300 to Mobley, who entered the house and purchased seven grams of crack cocaine from defendant Bodison while Brown waited in the vehicle.

## D.    June 28, 2011 Controlled Purchase

On June 28, 2011, CI Brown completed the second controlled purchase. This time, Brown drove directly to defendant Bodison's house on Wadsworth Road. There, Brown found Bodison standing in a shed adjacent to the house, cooking crack cocaine. That day, Brown purchased from defendant Bodison $1,000 worth of crack cocaine, MDMA, and BZP.

## E.    August 5, 2011 Controlled Purchase

Five weeks later, on August 5, 2011, the third controlled purchase occurred. Again, CI Brown drove to defendant Bodison's house. There, he found Bodison sitting in the driver's seat of a vehicle parked in the driveway. Brown approached the vehicle and, through the window, saw what he later described as "a pistol" lying on the passenger's seat. Defendant Bodison agreed to sell Brown a "half circle" of crack cocaine and 20 MDMA tablets. Bodison exited the vehicle, walked to a nearby wood line and removed drugs from a paper bag lying on the ground.

Bodison then reentered his vehicle. At that time, Brown leaned into the vehicle and paid Bodison $460 for the drugs.[2]

## F.    Motion for Acquittal, Verdict, and Motion for a New Trial

After the government rested its case, Bodison moved for a judgment of acquittal on all counts. The district court denied the motion as to the three substantive drug charges in Counts 2, 3, and 4, and reserved ruling as to the conspiracy charge in Count 1.

The jury found Bodison guilty on all four counts. The jury found that the Count 4 offense (based on the August 5, 2011 controlled purchase) involved crack cocaine but did not involve MDMA.

---

[2]At trial, a forensic chemist who analyzed the drugs acquired during the August 5, 2011 controlled purchase stated that defendant Bodison had actually sold Brown a quantity of 5-methoxy-N, N-diisopropyltryptamine, in addition to crack cocaine. The chemist testified that this drug resembled, but was different from, MDMA.

4

Defendant Bodison moved for a new trial under Federal Rule of Criminal Procedure 33(b)(2).  Bodison argued that the government's background evidence about Operation Woodchop violated Rules 404(b) and 403 of the Federal Rules of Evidence, and that the admission of this evidence had prevented him from receiving a fair trial.

The district court granted defendant Bodison's pending motion for acquittal as to the conspiracy count, finding that there was no evidence that Bodison and Mobley had formed an agreement to distribute drugs to CI Brown.  The district court denied the motion for a new trial, determining that the Operation Woodchop evidence did not run afoul of Rule 404(b).  Even if it did, the district court concluded that the evidence did not substantially influence the jury's verdict, and, therefore, any error in admitting it was harmless.

## G.    Presentence Investigation Report

According to the Presentence Investigation Report ("PSI"), Bodison was responsible for 27 grams of crack cocaine and 5.15 grams of MDMA and BZP, which resulted in a base offense level of 24 under U.S.S.G. § 2D1.1(c)(8).  The PSI applied a 2-level increase under § 2D1.1(b)(1) because Bodison possessed a firearm in connection with his offense, leading to an adjusted offense level of 26.

The PSI classified Bodison as a career offender under U.S.S.G. § 4B1.1 due to his prior 2005 conviction for fleeing or attempting elude, and his 2007

conviction for possession of cocaine with intent to distribute, which resulted in a total offense level of 34. Although Bodison's criminal record originally warranted a criminal history category of IV, his career offender designation automatically placed him into a criminal history category of VI, yielding a guidelines range of 262 to 327 months in prison.

Bodison filed written objections to the PSI, challenging, inter alia, (1) the two-level increase for possessing a firearm, and (2) his designation as a career offender. Bodison argued that he never possessed a firearm, was not charged with possessing a firearm, was never seen holding or carrying a firearm, and that no firearm was ever recovered from him. Bodison asserted that CI Brown made only a "vague reference to a firearm being on the seat of the car," and that Brown may have seen something only resembling a firearm, such as a toy or a BB gun. As to the career offender designation, Bodison argued that his 2005 conviction for fleeing or eluding was not a "crime of violence" under the Guidelines, and that the 2007 drug conviction could not be authenticated.

## H.    Sentencing

At the sentencing hearing, defendant Bodison reiterated his objection to the firearm increase, contending that (1) the only evidence of a gun was CI Brown's statement about seeing a pistol on the seat of Bodison's car; (2) the pistol Brown saw may not have been a real gun; and (3) Brown was not credible because he had

6

denied using or selling drugs at trial, and yet belonged to a drug gang.  Bodison also reiterated his objection to the career-offender designation.

The district court overruled Bodison's objection to the firearm increase, finding that the government proved his possession of a firearm by a preponderance of the evidence.  The district court sustained Bodison's objection to the career offender designation, concluding that there was insufficient evidence in the record to determine whether his prior conviction for fleeing or eluding qualified as a crime of violence.

Given these rulings, the district court set Bodison's offense level at 26 and placed him into a criminal history category of IV (as calculated by the PSI before the career offender designation), which yielded an advisory guidelines range of 92 to 115 months' imprisonment.

The district court imposed a within-guidelines sentence of 100 months on each of Counts 2, 3, and 4, to run concurrently, and a total 6-year term of supervised release.  The district court explained that a 100-month total sentence was appropriate in light of the 18 U.S.C. § 3553(a) factors, and noted that it would have imposed the same sentence even if Bodison was classified as a career offender.

Bodison timely appealed his convictions and sentences.

7

## II.  MOTION FOR A NEW TRIAL

### A.    Standards of Review

We review the denial of a motion for a new trial for an abuse of discretion. United States v. Dortch, 696 F.3d 1104, 1110 (11th Cir. 2012), cert. denied, 133 S. Ct. 993 (2013).  Where the defendant did not object contemporaneously at trial to the admission of the testimony that later forms the basis of his motion for a new trial, we review only for plain error.  See United States v. Nixon, 918 F.2d 895, 904–05 (11th Cir. 1990); see also United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007) (explaining that the purpose of requiring contemporaneous objections is (1) to protect judicial resources "by ensuring that the trial courts will have an opportunity to avoid errors that might otherwise necessitate time-consuming retrial," and (2) to "prevent counsel from 'sandbagging' the courts by withholding a valid objection from the trial court in order to obtain a new trial when the error is recognized on appeal" (internal quotation marks omitted)).[3]

### B.    Rules 404(b) and 403

Before reviewing the particular evidence Bodison claims should not have been admitted, we set forth the general Rule 404(b) and Rule 403 principles.

---

[3]To satisfy the plain-error standard, we must find that (1) the district court committed "error" in that "a legal rule was violated," (2) the error was plain or "obvious," and (3) the error "affect[ed] substantial rights" in that the error was prejudicial and not harmless.  United States v. Olano, 507 U.S. 725, 731–35, 113 S. Ct. 1770, 1776–78 (1993).  If these criteria are met, we may, in our discretion, correct the plain error if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  Id. at 735–36, 113 S. Ct. at 1779 (internal quotation marks omitted).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  We previously explained that

> evidence of criminal activity other than the charged offenses . . . falls outside the scope of the Rule when it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."

United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quoting United States v. Baker, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)).  Evidence is "inextricably intertwined with the evidence regarding the charged offense" when it "forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted.'"  Edouard, 485 F.3d at 1344 (quoting United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989)).

Even if it is not barred by Rule 404(b), evidence of other criminal activity "must still satisfy the requirements of Rule 403."  Id.  Under Rule 403, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

9

**C.    Statements About Operation Woodchop**

On appeal, defendant Bodison argues that the district court was required to grant his motion for a new trial because the court violated Rule 404(b) by admitting testimony from law enforcement witnesses that the investigation and prosecution of Bodison stemmed from Operation Woodchop.  Because Bodison did not object at trial to the statements regarding Operation Woodchop on Rule 404(b) grounds, we review the admission of these statements for plain error.  See Nixon, 918 F.2d at 904–05.

A review of the record establishes that three of the government's witnesses mentioned Operation Woodchop.  First, Detective Grant Meade of the Orange County Sheriff's Office ("OCSO") explained that he had first begun conducting surveillance of Bodison while working on Operation Woodchop.  Detective Meade stated that Operation Woodchop involved "a two-month wiretap and several hours of physical surveillance as well" around "[p]retty much the whole area of Zellwood."  He also stated that he had recruited Brown to work as a CI in the broader investigation and that Brown had performed controlled purchases from various drug dealers, including Bodison, during the two-year investigation.  Second, Drug Enforcement Agency ("DEA") Special Agent Dominick Braccio testified that he had worked on "the case on Mr. Bodison, as well as an operation known as Operation Woodchop which encompassed several more individuals in a

10

larger area." Third, Special Agent Joshua Baker, also with the DEA, testified that he had been the "lead agent over the entire case . . . . not just Mr. Bodison, but all other defendants and targets [the law enforcement agencies] were investigating."[4]

These brief references to Operation Woodchop provided context to the witnesses' investigations of Bodison. They were "natural part[s] of the witness[es'] accounts of the circumstances surrounding the offenses," and therefore were outside of Rule 404(b)'s scope. See Edouard, 485 F.3d at 1344 (internal quotation marks omitted). Furthermore, the effect of the Operation Woodchop references was not so unfairly prejudicial as to substantially outweigh their probative value in violation of Rule 403. Because the testimony about Operation Woodchop was not barred by Rules 404(b) or 403, the district court committed no abuse of discretion, much less plain error, in denying Bodison's motion for a new trial on this ground.

## D. Brown's Statements About a Murder and About Being Shot

Bodison next argues that a new trial was warranted because the district court violated Rule 404(b) by admitting CI Brown's testimony that (1) the intersection where Brown and Mobley arranged to meet on June 15, 2011 was where Brown's former acquaintance, Bradley Blanton, had been killed; and, (2) during the course

---

[4]The government also sought to solicit testimony regarding controlled drug purchases from other targets of the investigation; however the district court excluded such testimony on relevance grounds.

of Operation Woodchop, CI Brown "got shot at twice."  Bodison's arguments fail for two reasons.

First, although Bodison objected at trial to Brown's two statements, he did not challenge these statements in his motion for a new trial.  The district court could not have abused its discretion in declining to grant a motion for a new trial on grounds not even raised in that motion.

Second, even if we were to construe Bodison's appellate brief as directly challenging the district court's admission of CI Brown's two statements (rather than challenging the denial of a motion for new trial), his arguments fail.  "[W]e review the district court's evidentiary rulings for an abuse of discretion, but will reverse only if the error may have had a substantial influence on the outcome of the proceeding."  United States v. Augustin, 661 F.3d 1105, 1127 (11th Cir. 2011) (internal quotation marks omitted).

In this case, even if the admission of CI Brown's two statements was erroneous, it could not have substantially influenced the trial.  As for Brown's testimony about the death of his former acquaintance, Bradley Blanton, Brown testified that, while waiting to conduct a controlled purchase from defendant Mobley on June 15, 2011, Brown stood at an intersection where "Brad got killed at."  When the government attempted to elicit details about Blanton's death, Bodison objected on relevance grounds and the district court sustained the

12

objection.  There was no suggestion whatsoever that Bodison had anything to do with Blanton's killing, and Bodison does not explain how this statement was otherwise prejudicial.

As for CI Brown's testimony about being "shot at twice," Brown made this statement during the course of questions regarding payments he received from the DEA for his work as a CI and for relocation expenses.  Specifically, the government asked whether anything happened to cause Brown to fear for his safety, and, over Bodison's objections, Brown responded:  "Well, I got shot at twice."

Again, there was no suggestion that Bodison had anything to do with this shooting.  In fact, when the district court expressed concern that Brown's testimony was "getting something in that shouldn't be," the government expressly stated that it was "not suggesting that Mr. Bodison had anything to do with [Brown being shot at]."  CI Brown agreed, testifying: "not him, just over the whole investigation, what we [were] talking about, I got shot at twice . . . . [i]n Zellwood."  Afterwards, the district court advised the government to "move on" and the government returned to the broader discussion of payments Brown received for his CI work.

In light of the foregoing, there is no possibility that the admission of Brown's statements about the death of Blanton and being shot at, even if

erroneous, had "a substantial influence on the outcome of the proceeding." See Augustin, 661 F.3d at 1127 (internal quotation marks omitted). [5]  Accordingly, we affirm the district court on this issue.[6]

### III.    EXCULPATORY EVIDENCE UNDER <u>BRADY</u>

Bodison also argues that he is entitled to a new trial because the government withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  Specifically, Bodison contends that the government failed to disclose the fact that CI Brown had been a member of a gang that sold drugs.

Because Bodison did not make this argument in his motion for a new trial, we review it only for plain error.  See United States v. Lindsey, 482 F.3d 1285, 1293 (11th Cir. 2007) ("When a defendant does not raise a Brady objection in his motion for a new trial, [this Court] need only conduct a plain error review.").

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith

---

[5]We also reject Bodison's argument that the government's introduction of this evidence violated the district court's pretrial order excluding Rule 404(b) evidence.  In that pretrial order, the district court excluded (1) evidence of Bodison's prior conviction for possession of cocaine with intent to sell, and (2) testimony from a proposed witness, Theresa Hawkins.  The district court did not exclude all evidence potentially subject to Rule 404(b).

[6]To the extent that Bodison argues that the district court abused its discretion when it did not hold a hearing on his motion for a new trial, this argument is deemed abandoned.  Bodison mentions it only in a heading of his brief, and does not return to the issue in an argument section. See Cheffer v. Reno, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995).

14

or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196–97. To establish the existence of a Brady violation, a defendant must show that: (1) the government possessed favorable evidence, including impeachment evidence; (2) the defendant did not possess the evidence, and he could not obtain it himself through reasonable diligence; (3) the government suppressed the favorable evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001). "Failure to meet any one of these elements will defeat a motion for a new trial." United States v. Starrett, 55 F.3d 1525, 1554 (11th Cir. 1995).

The Supreme Court has explained that "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400 (1976).

Bodison satisfied the first and third elements because the government knew that Brown had been a member of a gang that dealt drugs, and failed to disclose

15

this information before trial.[7]  Bodison, however, did not establish the fourth element—that a reasonable probability exists that disclosure of Brown's experience as a gang member would have resulted in a different outcome in the case.[8]

Bodison argues that a "reasonable probability" exists because Brown's having been in a gang would have damaged his credibility, and, according to Bodison, "[t]he whole case rested upon . . . Brown's credibility."  Bodison's argument fails because the whole case did not, in fact, rest on Brown's credibility—there was ample evidence, in addition to Brown's testimony, to support the jury's verdict.

For example, the jury heard audio recordings from the June 28, 2011 controlled purchase, during which the jury listened to defendant Bodison (1) cook crack cocaine; (2) give instructions to Brown on how to cook crack cocaine; and (3) advise Brown on how to sell crack cocaine without being robbed.

---

[7]Bodison argues that it was not until his sentencing hearing that he first learned that Brown had been a member of a gang that sold drugs.  During that hearing, Detective Meade testified that Brown "was a gang member involved in this gang."  Bodison contends that, during his trial testimony, Detective Meade intentionally avoided referring to Brown as a gang member so as not to damage Brown's credibility.  We need not consider this argument, as bad faith is not an element to a Brady violation.  Brady, 373 U.S. at 87, 83 S. Ct. at 1196–97.

[8]The government argues that Bodison also has not established the second element.  The government contends that "[a]s a drug dealer, Bodison was part of the criminal element in Zellwood."  Thus, the government concludes that "Bodison certainly knew or easily could have learned that Brown had been a member of a Zellwood gang."  Because we conclude that the Bodison has not met his burden on the fourth element, we need not address this argument on the second element.

The jury also heard the testimony of Detective Paul Harvey of the Tavares, Florida Police Department. Detective Harvey, working undercover, was with Brown during the August 5, 2011 controlled purchase. Detective Harvey directly corroborated Brown's testimony about the controlled purchase.

Other law enforcement officers provided some corroboration for Brown's accounts of the other two controlled purchases. Specifically, Detective Meade testified about the June 15, 2011 and June 28, 2011 controlled purchases. Detective Meade was in concealed surveillance positions during these controlled purchases. Special Agents Braccio and Baker testified that they also observed the June 28, 2011 controlled purchase from a concealed location that was approximately 30 yards from Bodison's residence.

Moreover, witnesses also testified about (1) the precautions that law enforcement officers took to ensure that any drugs that Brown turned over after a controlled purchase actually came from Bodison (either directly or through Mobley), and not from some other source; (2) the chains of custody for the drugs recovered during the June 28, 2011 and August 5, 2011 controlled purchases; and (3) the chemical analyses performed on the drugs recovered during the controlled purchases.

In light of this extensive evidence, we conclude that defendant Bodison has not shown a reasonable probability that even if the jury heard about Brown's prior

17

gang affiliation, it would have found Bodison not guilty on any count.

Consequently, any failure by the government to disclose Brown's prior gang

affiliation does not entitle Bodison to a new trial.

## IV.    SECTION 2D1.1(b)(1) ENHANCEMENT

In challenging his sentence, Bodison argues that the district court

improperly applied the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for

possessing "a dangerous weapon (including a firearm)" in connection with his drug

offenses.

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1)

for clear error, and the application of the Sentencing Guidelines to those facts <u>de</u>

<u>novo</u>." United States v. Pham, 463 F.3d 1239, 1245 (11th Cir. 2006) (internal

quotation marks omitted).

Section 2D1.1(b)(1) provides for a two-level increase to a defendant's

offense level "[i]f a dangerous weapon (including a firearm) was possessed."

U.S.S.G. § 2D1.1(b)(1).  The enhancement is appropriate "if the weapon was

present, unless it is clearly improbable that the weapon was connected with the

offense."  U.S.S.G. § 2D1.1, comment. (n.11(A)).

To justify a § 2D1.1(b)(1) firearms enhancement, "the government must

either establish by a preponderance of the evidence that the firearm was present at

the site of the charged conduct or prove that the defendant possessed the firearm

during conduct associated with the offense of conviction." United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006). If the government meets this initial burden, the burden shifts to the defendant to demonstrate "that a connection between the weapon and the offense was 'clearly improbable.'" Id.

In this case, the district court did not clearly err in finding that defendant Bodison possessed a firearm during his drug offense. Brown testified at trial that, during the August 5, 2011 controlled purchase, he saw "a pistol" lying "[o]n the seat" of Bodison's vehicle. Detective Harvey testified that Bodison was sitting in the vehicle when Brown handed him the money. This testimony sufficiently establishes that Bodison possessed a firearm during the charged conduct, thereby fulfilling the government's initial burden. See Stallings, 463 F.3d at 1220; see also United States v. Carillo-Ayala, 713 F.3d 82, 91–92 (11th Cir. 2013) ("Cases decided under § 2D1.1 recognize that proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)."). And we have no reason to doubt that the district court properly credited Brown's testimony. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (stating that we must accept the district court's credibility determinations unless the disputed testimony "is contrary to the laws of nature, or is so

19

inconsistent or improbable on its face that no reasonable factfinder could accept it" (internal quotation marks omitted)).[9]

Because the government proved that defendant Bodison possessed a firearm during the August 5 drug transaction, the burden shifted to Bodison to show that the "connection between the weapon and the offense was 'clearly improbable.'" See Stallings, 463 F.3d at 1220. Bodison failed to meet this burden. Nothing in the record suggests that it was "clearly improbable" that the firearm was connected to the offense.

Defendant Bodison argues that the firearm was not connected to the offense because Brown observed the gun lying on the seat of Bodison's vehicle, whereas the actual drug transaction occurred outside of the vehicle. We disagree. Even if the actual drug-money exchange on August 5 occurred outside of Bodison's vehicle, the firearm was still close enough for Bodison to use it against Brown. See Carillo-Ayala, 713 F.3d at 92 ("While . . . facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's potential use is critical."); see also United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998)

_____

[9]We reject Bodison's arguments that Brown's description of the firearm as a "pistol," without additional details, was too vague to establish the existence of an actual firearm, or that the government was required to refute the possibility that Brown confused some other object for a firearm. Brown testified that he saw a firearm, the district court credited his testimony, and nothing in the record suggests that what Brown saw was not an actual firearm.

20

(affirming the § 2D1.1(b)(1) enhancement, even though the firearm was in a different room within a warehouse where the drug transaction occurred, because the evidence supported the conclusion that that "the gun was there for personal security in the event something went wrong in connection with the drug trafficking transaction" (internal quotation marks omitted)).

In light of the foregoing, we cannot say that the district court clearly erred in applying the two-level enhancement to Bodison's offense level provided for in § 2D1.1(b)(1).

## V.    ACCURACY OF THE JUDGMENT

Although the parties do not address it, we raise sua sponte the issue of whether the final judgment accurately reflects Bodison's convictions.[10]  The final written judgment reflects his conviction on Count 4 for an offense involving crack cocaine, MDMA, and BZP.  However, Count 4 alleged that Bodison's offense involved only crack cocaine and MDMA.  The jury found that the offense involved only crack cocaine.  Therefore, the judgment should state that, on Count 4, Bodison was convicted of an offense involving only crack cocaine.

Accordingly, we vacate the judgment and remand for the district court to correct the clerical error.

---

[10]We may sua sponte raise the issue of clerical errors in a judgment and we may remand with instructions to the district court to correct those errors.  United States v. Massey, 443 F.3d 814, 822 (11th Cir. 2006).  It is a fundamental error for a district court "to enter a judgment of conviction against a defendant who has not been charged, tried, or found guilty of the crime recited in the judgment."  United States v. James, 642 F.3d 1333, 1343 (11th Cir. 2011).

## VI.  CONCLUSION

After review of the record and the parties' briefs, we affirm Bodison's convictions and sentences.  We remand for the district court to correct the written judgment.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**